938 A.2d 1034

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Sheldon L. WEST, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 2006.

Decided Dec. 27, 2007.

484

Robert A. Willig, Pittsburgh, Amy Leigh Fitzpatrick, for the Com. of PA., appellant.

Herbert A. Terrell, McAbee, Terrell and Associates, Pittsburgh, for Sheldon L. West, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice BAER.

In this case, we granted allowance of appeal to determine whether the Superior Court improperly concluded that *habeas corpus* relief was available to Appellee Sheldon West, who, for nine years, remained at liberty despite the imposition of a valid criminal sentence after his conviction of various drug crimes and culmination of all appellate proceedings, because the appropriate authorities failed to call and commit him to serve his sentence. The Superior Court, in a published decision, found that West was entitled to *habeas corpus* relief and discharged him from having to serve his criminal sentence. For the reasons that follow, we now reverse the Superior Court's decision.

The facts are relatively straightforward. On May 10, 1989, West was arrested for selling cocaine. He was charged with possession and possession with intent to deliver a controlled substance. Approximately one year later, on May 11, 1990, West appeared before the trial court, which heard evidence on West's motion to suppress physical evidence. Following that hearing, the court denied West's prayer for relief. On that same date, the court conducted a bench trial and found West guilty of the crimes charged. Thereafter, on July 17, 1991, West was sentenced to serve a term of twenty-seven to fifty-four months of imprisonment.

New counsel was then hired by West's mother to file an appeal on West's behalf. Accordingly, counsel appealed to the Superior Court, and, simultaneously, sought West's release on bail pending appeal. In his direct appeal, West alleged, *inter alia,* that the trial court erred in failing to suppress the evidence obtained by police as he asserted they lacked probable cause to arrest him.

On September 11, 1991, the trial court granted West's release on $20,000 bail pending his appeal. West's mother

posted her residence as security on the appeal bond and West was released. On June 10, 1992, the Superior Court affirmed West's judgment of sentence in an unpublished decision. Thereafter, his appellate counsel filed a petition for allowance of appeal with our Court, which we denied on March 24, 1993. On April 7, 1993, we remanded the certified record to the Allegheny County Clerk of Courts.

Following the above noted events, and despite West's judgment of sentence becoming final, West was not recalled to serve his sentence in conformity with Pa.R.A.P. 1763, which specifies as follows:

> Unless otherwise ordered pursuant to this chapter, upon the remand of the record in any matter in which the judgment of sentence was affirmed, a defendant who has been released pending appeal shall appear in the lower court at such time as the defendant may be there called, and shall be committed by that court until the defendant has complied with the original sentence, or any part thereof which had not been performed at the time the defendant was released pending appeal.

West remained at liberty for nine years, until April 24, 2002, when the matter was brought to the attention of the administrative judge of the criminal division of the common pleas court.[1] Accordingly, on that date, the court issued an arrest warrant for West mandating his return to custody to begin serving his July 17, 1991 sentence. West remained at large until June of 2002, when he was stopped by police for a routine traffic offense. At that time, police discovered the arrest warrant and took West into custody. He was then committed to serve his prior criminal sentence.

Thereafter, West retained new counsel, who, on October 21, 2002, filed a Writ of *Habeas Corpus* with the common pleas court. In his petition, West raised claims relating to both a violation of his substantive due process rights because of the government's delay in confining him, as well as claims relating

---

1. During this time period, the trial judge, who convicted and sentenced West, passed away. Also during this period, West was arrested a total of four times in Allegheny and Westmoreland Counties.

to counsel's ineffectiveness for failing to inform him of the outcome of his direct appeal impacting a successful challenge to the legality of the search and seizure underlying his 1990 conviction. Hearings were held before the common pleas court on November 4, 2002 and January 27, 2003. During the course of the initial hearing, counsel for West orally requested that he be given leave to amend his request for relief to include a claim for post-conviction relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–46. The trial court granted the request; however, West never amended his pleading and, instead, on March 6, 2003, filed a "Brief in Support of Writ of Habeas Corpus/Post Conviction Relief Petition."

In his brief, West contended that the failure of the courts to summon him promptly to serve his sentence after affirmance and then to recommit him years later was "outrageous conduct which is offensive to the [C]onstitution." In this regard, he also claimed actual prejudice based upon the passage of time, which resulted in his inability to challenge his conviction and sentence because of missing evidence, dead witnesses and lost trial transcripts. Accordingly, he claimed the Commonwealth was estopped from enforcing the judgment of sentence at such late date.

The Commonwealth responded, initially framing their argument in terms of whether West was entitled to relief pursuant to the PCRA, which, in the Commonwealth's view, was the sole means by which West could obtain relief at this stage of the proceedings, i.e., post-conviction. The Commonwealth noted in this regard that West's petition was untimely on its face as a PCRA petition must be filed within one year of the date of final judgment. See 42 Pa.C.S. § 9545(b)(1) (Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final). Moreover, the Commonwealth pointed out that West failed to plead any of the applicable exceptions to the time requirements found in Section 9545(b)(1)(i)-(iii) (including, governmental interference, newly discovered evidence and newly recognized retroactive constitu-

tional rights). Accordingly, the Commonwealth contended that relief was not warranted.

The Commonwealth further argued that, even if review pursuant to *habeas corpus* was permitted, West was not entitled to relief on the merits of his substantive due process claim for several reasons. First, the Commonwealth pointed out that substantive due process rights protect against arbitrary and oppressive exercise of governmental power. Here, West was duly tried, convicted, and sentenced. Although there was substantial delay in finally recommitting West, there was nothing arbitrary about it. The Commonwealth conceded that although the delay was significant, it was due merely to negligence, not outrageous governmental conduct.

Further, the Commonwealth contended that West suffered no prejudice from the delay. Specifically, the Commonwealth contended that rather than do something constructive with his life while he remained erroneously at liberty, West continued his life of crime, having been convicted of drunk driving, and cocaine possession in Allegheny County and felony drug charges in Westmoreland County. The Commonwealth also disputed West's contention that he was unaware that his conviction had been sustained on appeal.

Thereafter, the trial court denied West's request for relief. Without examining whether West was entitled to *habeas corpus* relief or whether the PCRA provided the sole means for relief as contended by the Commonwealth, the trial court examined the merits of West's claim that the delay in committing him to serve his sentence violated his substantive due process rights. In this regard, the court examined the Superior Court's decision in *Commonwealth v. Blair*, 699 A.2d 738 (Pa.Super.1997), where the court similarly examined whether pre-incarceration delay prejudiced the defendant thus entitling him to dismissal of his judgment of sentence. Defendant Blair was released on a $50,000 appeal bond following his conviction and sentencing. At the completion of a direct appeal resulting in affirmance of the conviction and sentence, the record was remanded to the common pleas court. Because the bond papers were missing from the record, the court was unaware

that Blair remained at large on bond and, accordingly, the court did not recall him to begin serving his sentence. Two years later, the mistake was discovered, and, following his return to custody, the court committed Blair requiring that he serve his sentence.

Blair filed a motion to dismiss and/or vacate his judgment of sentence, arguing that he was prejudiced by the delay between the denial of his appeal and his incarceration. The trial court denied relief and the Superior Court affirmed. Concluding that Blair was not entitled to relief, the Superior Court noted that it would "not allow the court system's inadvertent error to cancel any part of Blair's punishment for the crimes for which he was justly convicted and sentenced. Society has an interest in knowing that its criminals are serving the punishment to which they have been sentenced, regardless of an unintended delay or negligent error attributable to the government." *Blair*, 699 A.2d at 743. In addressing Blair's due process claim, the court stated that "we are not confronted here with conduct so 'affirmatively improper or grossly negligent' by the government that due process is violated...." *Id.* at 745.

As noted, the trial court in the matter *sub judice*, likewise denied West relief on the merits of his substantive due process claim raised in the context of *habeas corpus*, concluding that he did not suffer prejudice as a result of the government's non-intentional delay in being recalled to serve his properly imposed criminal sentence.

West filed an appeal to the Superior Court, again arguing alternatively that he was entitled to relief because the delay in recalling him to serve his sentence violated his substantive due process rights and that direct appeal counsel was ineffective in failing to inform him of the outcome of his direct appeal, which, in turn hampered his ability to file a petition for post-conviction collateral relief challenging that he was subject to an illegal search and seizure by police.

The Superior Court initially recognized that the substantive due process claim made by West was raised as a claim for

*habeas* and that *habeas* relief is not available where a remedy is available pursuant to the PCRA, citing 42 Pa.C.S. § 6503(b)("Where a person is restrained by virtue of sentence after conviction for a criminal offense, the writ of habeas corpus shall not be available if a remedy may be had by post-conviction hearing proceedings authorized by law"). Specifically, in this regard, the court recognized the longstanding principle that the PCRA subsumes the remedy of *habeas corpus* with respect to remedies offered under the PCRA. *Commonwealth v. West*, 868 A.2d 1267, 1270 (quoting, *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 640 (1998)). The court concluded, however, that West's claim that it would violate his substantive due process rights to subject him to confinement nine years after judgment of sentence was entered could not have been pursued through the PCRA. To reach this conclusion, the Superior Court examined the eligibility requirements of the PCRA, which, in substance, provide for relief where the **conviction** or **sentence** at issue resulted from a constitutional violation, 42 Pa.C.S. § 9543(a)(2)(i), ineffective assistance of counsel, 42 Pa.C.S. § 9543(a)(2)(ii), an unlawfully induced plea, 42 Pa.C.S. § 9543(a)(2)(iii), the improper obstruction by governmental officials, 42 Pa.C.S. § 9543(a)(2)(iv), or in a case where exculpatory evidence has been discovered, 42 Pa.C.S. § 9543(a)(2)(vi), an illegal sentence has been imposed, 42 Pa.C.S. § 9543(a)(2)(vii), or where the tribunal conducting the proceeding lacked jurisdiction. 42 Pa.C.S. § 9543(a)(2)(viii).

The court determined that West was not alleging that the truth-determining process underlying his conviction and sentence was undermined by constitutional violations or ineffective assistance of counsel. The panel further noted that West was not alleging governmental interference with his right to appeal, that the sentence imposed was greater than the lawful maximum, or that the court lacked jurisdiction. Additionally, the panel found that West was not alleging after-discovered exculpatory evidence. Thus, the Superior Court determined that "none of the bases for relief under the PCRA address the unique situation presented in this case." *Id.* at 1272. Conse-

quently, the panel concluded that because no other remedy existed, it would examine the merits of West's claim for *habeas corpus* relief on due process grounds.

Accordingly, the Superior Court examined whether West's substantive due process rights were violated when he was recommitted to prison in 2002 following a nine-year delay from the time the record was remanded after appeal. Recognizing the dearth of Pennsylvania authority on the issue of whether there is a right to "speedy incarceration," the Superior Court looked at the factors used in the speedy trial case of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (holding that a defendant's constitutional right to speedy trial can be determined only on an *ad hoc* basis in which the conduct of the prosecution and the defendant are weighed and balanced and certain factors considered, including the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant), and applied them *sub judice*.

Pennsylvania courts have previously followed *Barker* in resolving claims that procedural delays in criminal cases constitute a substantive due process violation, and we have set forth a four prong test in which we inquire as follows: (1) whether the delay itself is sufficient to trigger further inquiry; (2) if so, the reason for the delay; (3) whether the defendant timely asserted his rights, and; (4) whether there is any prejudice to the defendant from the delay. *See e.g., Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596 (1998) (applying *Barker* in deciding whether a pre-arrest delay of eleven years constitutes a due process violation), and *Commonwealth v. Glass*, 526 Pa. 329, 586 A.2d 369 (1991) (applying *Barker* in discussing delays in sentencing after conviction and holding that the same considerations applicable to speedy trial claims are applicable to claimed due process violations based on sentencing delay).

Applying this Pennsylvania jurisprudence, the Superior Court (1) found that a delay of nine years, in and of itself was sufficient to trigger further inquiry; (2) faulted the court system for not recognizing the error earlier, noting that West

had several contacts with the justice system over those nine years, which failed to address the situation, "even after recognizing that a question existed. . . ." *West*, 868 A.2d at 1275; (3) assumed that West timely asserted his rights once he was incarcerated; and (4) found West was prejudiced due to lost transcripts and missed opportunities to challenge further his conviction. *Id.* at 1277. After finding that the factors weighed in favor of West, the Superior Court reversed the order denying *habeas corpus* relief and ordered that West be discharged from the sentence imposed on his 1990 conviction.

In a dissenting opinion, Judge Orie Melvin disagreed with the majority's analysis of the factors set forth in *Barker*. The dissent particularly challenged the prejudice prong of the *Barker* analysis, contesting the finding that West had been prejudiced as a result of the delay in recommitment. Regarding the majority's conclusion that West was prejudiced due to lost transcripts and missed opportunities to challenge further his conviction, the dissent noted that the only claim West asserted that he would have pursued involved the trial court's alleged failure to suppress the evidence obtained as a result of his arrest. The dissent observed, however, that this was the very claim that was litigated on direct appeal and rejected. As it is well settled that claims that were litigated on direct appeal cannot be relitigated on collateral appeal, 42 Pa.C.S. 9543(a)(3), in the dissent's view, West simply could not have been prejudiced by his inability to relitigate the claim on collateral appeal. Accordingly, the dissent concluded that without a finding of prejudice based on the time that West was mistakenly at liberty, West should not have been granted *habeas corpus* relief, or have been discharged from serving his sentence.

■ We granted the Commonwealth's appeal to address whether the Superior Court erroneously permitted West to proceed on a claim for *habeas corpus* relief where, in this Commonwealth, such claims are subsumed by the PCRA when it is available, and, if *habeas corpus* did lie, whether West was entitled to relief on the merits. We initially turn to the Commonwealth's claim that the Superior Court erred in re-

494

viewing West's claim for relief as properly within the realm of claims permitted by way of *habeas corpus*.

The Commonwealth complains that in rendering its decision, the Superior Court resurrects the bifurcated system of post-conviction relief that we rejected in *Lantzy* and renders the time-bar provisions of the PCRA meaningless. The Commonwealth contends that as a result of this decision, there will be a flood of *habeas corpus* filings seeking to avoid the statutory restrictions of the PCRA.

In support of its position, the Commonwealth relies on the PCRA, which states, "the action established in this subchapter shall be the sole means of obtaining collateral relief and encompassing all other common law remedies for the same purpose that exists when this subchapter takes effect, including habeas corpus. . . ." *See* 42 Pa.C.S. § 9542. The Commonwealth explains that in *Lantzy* we interpreted this excerpt from the PCRA to mean that there is no "bifurcated system of post-conviction review where some claims are cognizable under the PCRA while others are cognizable under various common law remedies 'outside' of the PCRA framework." *Lantzy* at 569–70. The Commonwealth contends that since *Lantzy*, our case law has evolved such that if a defendant's claims could have been brought under the PCRA, then *habeas corpus* relief is unavailable. The Commonwealth provides a chain of cites wherein it claims courts of this Commonwealth have gone to great lengths to expand the universe of cognizable claims under the PCRA by broadly interpreting the terms of the Act and channeling the widest category of matters possible into the statutory post-conviction procedure. Commonwealth's Brief at 11 (citing, *Commonwealth ex. rel. Dadario v. Goldberg*, 565 Pa. 280, 773 A.2d 126 (2001) (ineffective assistance of counsel during plea bargaining process cognizable under the PCRA); *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999) (ineffective assistance during penalty phase of capital case cognizable under the PCRA); *Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761 (2004) (whether case should be in juvenile court or criminal division cognizable under PCRA); *Commonwealth v. Liebel*, 573 Pa. 375, 825 A.2d

630 (2003) (ineffectiveness for failing to file a petition for allowance of appeal cognizable under PCRA); *Commonwealth v. Beck*, 848 A.2d 987 (Pa.Super.2004) (legality of sentence cognizable under PCRA); *Commonwealth v. Prout*, 814 A.2d 693 (Pa.Super.2002) (Rule 600 claim couched in terms of ineffectiveness cognizable under the PCRA.)).

In response, West asserts that a review of the governing statutory framework of the PCRA, as well as case law surrounding it, reveals that none of the bases for relief in the PCRA addresses the unique situation presented here. Specifically, the eligibility requirements set forth in PCRA provide:

### § 9543. Eligibility for relief

(a) General rule.—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

(1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence.

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated or waived.

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

(b) Exception.—Even if the petitioner has met the requirements of subsection (a), the petition shall be dismissed if it appears at any time that, because of delay in filing the petition, the Commonwealth has been prejudiced either in its ability to respond to the petition or in its ability to re-try the petitioner. A petition may be dismissed due to delay in the filing by the petitioner only after a hearing upon a motion to dismiss. This subsection does not apply if the petitioner shows that the petition is based on grounds of which the petitioner could not have discovered by the exercise of reasonable diligence before the delay became prejudicial to the Commonwealth.

42 Pa.C.S. § 9543.

Examining the foregoing requirements, West points out that, in the instant case, he is not alleging that the truth

determining process underlying his 1990 conviction was undermined by constitutional violations or ineffective assistance of counsel. He does not allege an interference with his right to appeal, the imposition of a sentence greater than the lawful maximum, or the jurisdiction of a tribunal. He does not assert the later discovery of exculpatory evidence. Accordingly, West argues that the PCRA simply does not provide relief for challenging the legality of his detention or commitment to prison following the nine-year period in which he was mistakenly at liberty on his appeal bond. Because he has no true remedy available to him under the PCRA, West asserts that his sole procedural recourse was to seek *habeas corpus* relief.

In *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999) our Court, relying on our prior holding in *Commonwealth v. Chester,* 557 Pa. 358, 733 A.2d 1242, 1251 (1999), stated that a bifurcated system of post-conviction review, in which certain claims for relief are considered under the PCRA and others are considered outside its framework, is inconsistent with the legislature's intent to make the PCRA, the exclusive vehicle for obtaining collateral review and relief which encompasses all other common law remedies such as *habeas corpus.* Because of the legislature's intent in this regard, our Court began "channeling the widest category of matters possible into the statutory post-conviction procedure." *Commonwealth v. Cruz,* 578 Pa. 263, 851 A.2d 870, 875 (2004); *see also Com. ex rel. Dadario v. Goldberg,* 565 Pa. 280, 773 A.2d 126, 130 (2001)(holding that *all* claims of counsel ineffectiveness are cognizable under the PCRA regardless of the nature of such claims and regardless of whether such claims implicate the truth determining process). Accordingly, we held that the PCRA subsumes all forms of collateral relief, including *habeas corpus,* **to the extent a remedy is available under such enactment.** *See Peterkin,* 722 A.2d at 640.

 Despite our prior indications that all claims that can be channeled into the PCRA should be so channeled, the privilege of the writ of *habeas corpus* has not been suspended in this Commonwealth. *See* 42 Pa.C.S. § 6501 (the privilege of the writ of habeas corpus shall not be suspended ...). Addition-

ally, we have never held that the remedy of *habeas corpus* does not exist for the rare instance where the PCRA offers no remedy. *See Peterkin,* 722 A.2d at 640. Recently, in *Commonwealth v. Judge,* 591 Pa. 126, 916 A.2d 511 (2007), we examined a situation where the claim sought did not implicate any of the remedies available pursuant to the PCRA and, accordingly, we held that *habeas* review was warranted.

Specifically, in *Judge,* our Court examined, as a threshold matter, whether *habeas corpus* was available to adjudicate whether defendant Judge's deportation from Canada to face the death penalty in Pennsylvania, which was imposed prior to Judge's fugitive flight to Canada, violated his rights under the International Covenant for Civil and Political Rights (ICCPR). At the time Judge sought such relief, he had already filed a direct appeal from the judgment of sentence of death and a petition for post-conviction relief pursuant to the PCRA prior to his deportation. Both of these appeals were unsuccessful. In subsequently challenging his deportation as violative of the ICCPR, Judge filed a petition asserting jurisdiction under either the PCRA or the statutory and constitutional right to *habeas corpus* relief. The PCRA court, assuming that Judge's claims were cognizable under the PCRA, dismissed his petition on the ground that federal *habeas* proceedings were pending.

Judge appealed to our Court, arguing that he was entitled to *habeas corpus* relief, as opposed to relief pursuant to the PCRA, because his claim did not relate to any errors in the guilt or penalty phases of his trial; rather, his claim fell outside the claims contemplated by the PCRA. Alternatively, in the event the Court were to reject Judge's contention that his claim was reviewable pursuant to *habeas corpus,* Judge argued that the Court should review it pursuant to the PCRA. The Commonwealth argued that the claim raised by Judge was cognizable under the PCRA and that, therefore, *habeas* review was not available. The Commonwealth went on to argue that because the petition filed by Judge failed to meet the jurisdictional time limits of the PCRA and his claim did not fall within any of the exceptions to such time limits, relief

on the petition was time barred, and, therefore, outside the jurisdiction of Pennsylvania courts.

Our Court began analyzing the parties' claims by noting that the Commonwealth was correct in its assertion that the PCRA subsumes all forms of collateral relief, including *habeas corpus*, to the extent that a remedy is available under such enactment. We likewise noted that Judge was correct in his observation that our Court has never held that *habeas* cannot provide a separate remedy, in appropriate circumstances. Significantly, in this regard, we stated:

> Indeed, the boundaries of cognizable claims under the PCRA can only be extended so far as is consistent with the purposes of the statute, and we believe that [Judge's] claim concerning his deportation from Canada to face a death sentence falls outside the intended scope of the PCRA.

*Judge*, 916 A.2d at 520. In so concluding, we found it significant that Judge was not asserting his innocence of the underlying crimes or that his sentence was illegal when imposed. Rather, we noted that, his claim that executing him would violate international law has

> no connection to the truth-determining process and [does] not render the underlying adjudication of guilt or innocence, which took place in the United States more that ten years earlier, unreliable.

*Id.* Moreover, we observed that Judge's sentence was lawful as it was not greater than the lawful maximum permitted by statutory limits. Thus, we concluded that, "[i]n essence, [Judge] is challenging the continued validity of his sentence, a claim that is at the heart of habeas corpus." *Id.* at 521.

Applying the analytical framework set forth in *Judge*, we likewise conclude that West's substantive due process challenge to the continuing validity of his judgment of sentence, following nine years of pre-incarceration delay, falls outside the ambit of the potential claims cognizable under the PCRA. As in *Judge*, West's claim does not implicate the truth determining process underlying his conviction and sentence, nor does it implicate the legality of the sentence imposed. Rather,

West asserts that incarcerating him on such a sentence after the significant delay between the time of sentencing and the time he was recalled is fundamentally unfair and therefore constitutionally infirm. Thus, as we conclude that West could not pursue this claim through the PCRA, we find that the Superior Court properly reviewed it pursuant to *habeas corpus*. Having so concluded, we turn to the merits of the claim.

█ On the merits of West's substantive due process claim, both West and the Commonwealth advocate that our Court utilize the factors set forth in the United States Supreme Court decision of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which the Superior Court applied, in determining whether West's due process rights were violated. As noted earlier, although *Barker* involved a defendant's pretrial right to a speedy trial, Pennsylvania courts have applied the *Barker* factors in the context of post-conviction delay. *See Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980) (holding that the almost two year delay between conviction and sentencing did not warrant relief where defendant was unable to demonstrate resulting prejudice under *Barker*); *Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935 (1983) (holding, in light of *Barker* factors, the forty-nine month delay between the date post-verdict motions were reinstated and sentencing did not warrant relief); and *Commonwealth v. Glass*, 526 Pa. 329, 586 A.2d 369 (1991) (holding that fifty-one month delay between conviction and sentencing did not violate defendant's right to speedy trial or due process in light of *Barker.*). Moreover, in *Glass*, we specifically noted that the *Barker* factors were applicable in analyzing defendant Glass' general due process claim regarding the delay between conviction and sentencing. In this regard, we noted that, "the same considerations applicable in the context of a speedy trial claim are applicable to a claimed due process violation based on delays in proceedings." *Id.* at 373 (quoting, *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597, 601 (1980)).

While our Court has not had occasion to analyze a delay consistent with the facts of this case, which occurred post-sentence, the Superior Court did so in *Commonwealth v.*

*Blair*, 699 A.2d 738 (Pa.Super.1997). As noted earlier, in *Blair*, the court was faced with, *inter alia*, a due process challenge to defendant Blair's incarceration following a two-year delay from affirmance of judgment of sentence and the time Blair was recalled to serve his sentence. Blair argued that such delay was egregious and warranted relief either in the form of credit for time served or, in the alternative, his discharge from sentence. Specifically, Blair claimed he suffered prejudice because during the two year delay, he had become gainfully employed, secured an apartment, purchased a car and continued his education, all of which would be lost if he was recalled.

In rejecting Blair's claims, the Superior Court first noted that no on-point Pennsylvania precedent existed regarding the question before it. Thus, the court examined federal cases and cases from other jurisdictions and noted that historically the rule was that where a final sentence of imprisonment had been rendered, delay in executing such sentence did not preclude a subsequent enforcement of the sentence. *Blair*, 699 A.2d at 740 (citing, 98 A.L.R.2d 687) (citations omitted.). The court noted that this approach followed a simple, logical view that, regardless of the delay between sentencing and confinement, a judgment of sentence could only be satisfied with a term of imprisonment. *Id.* at 740–41 (citations omitted). The court then noted that more recent cases examined the totality of the circumstances surrounding the delay in execution of sentence and, in particular, federal courts have examined alleged due process violations in this context. *Id.* (citing, *United States v. Martinez*, 837 F.2d 861 (9th Cir. 1988)). In this regard, the Superior Court observed that some courts have held that where the government's agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in its aftermath, the government waives the right to impose sentence. *Id.*

Applying the foregoing, the Superior Court determined that where the government's action in delaying Blair's incarcera-

tion was merely negligent, there was no reason to apply an exception to the general rule that "a person erroneously at liberty must serve the **full** sentence imposed after the error is discovered." *Id.* at 743 (emphasis in original). The court, while recognizing that Blair failed to be incarcerated because of an error not his own making and did not flee or conceal his identity to avoid serving his sentence while erroneously at liberty, noted the following:

> While we sympathize with Blair's plight, we conclude, however, that these factors do not and cannot nullify any portion of Blair's sentence of imprisonment. We will not allow the court system's inadvertent error to cancel any part of Blair's punishment for the crimes for which he was justly convicted and sentenced. Society has an interest in knowing that its criminals are serving the punishment to which they have been sentenced, regardless of an unintended delay or negligent error attributable to the government.

*Id.*

The court also addressed Blair's argument, which is remarkably similar to West's in the case before us, that the failure to incarcerate him promptly violated his due process rights in the same way as the failure to conduct a speedy trial violates due process. The *Blair* court, in examining this claim, applied the four part test of *Barker,* requiring courts to examine, 1) whether the delay itself is sufficient to trigger further inquiry, 2) the reason for the delay, 3) the timeliness of the defendant's assertion of his or her right, and 4) any resulting prejudice to the defendant. In applying the test, the court concluded that the two year delay was sufficient to prompt further inquiry. Furthermore, the court concluded that the government's delay was not deliberate, but rather, was due to negligence. Specifically, the documentation received by trial court following remand from the affirmance of judgment of sentence did not contain Blair's bond papers. As to the third factor, while the court questioned whether Blair was unaware that his judgment of sentence had been affirmed, it assumed *arguendo* that he was unaware and, therefore, concluded that he acted promptly in asserting his rights after learning that final

judgment had been imposed. Notwithstanding these determinations, the court concluded that Blair was not entitled to relief because he was unable to demonstrate prejudice as a result of the delay. The court noted that the traditional areas of prejudice in the context of the right to speedy trial concern preventing oppressive pre-trial incarceration, minimizing the accused's anxiety, and limiting the possibility that the defense will be prejudiced by lost or missing witnesses. Noting that none of these bases existed in the case before it, and rejecting the notion that Blair was somehow prejudiced by the gains he made while at liberty, the court denied Blair relief.

As noted previously, in the case *sub judice,* the Superior Court, likewise, analyzed West's due process claim pursuant to *Barker;* however, unlike in *Blair,* the court concluded that West was entitled to relief on his due process claim. Specifically, the court first noted that the nine-year delay present in this case was sufficient to prompt further inquiry. Next, the court looked at the reason for the delay. In this regard, the court noted that

> a deliberate attempt to delay should be weighed heavily against the government while '[a] more neutral reason such as negligence ... should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'

*West,* 868 A.2d at 1274–75 (quoting *Commonwealth v. Glover,* 500 Pa. 524, 458 A.2d 935, 938–39 (1983)). The court proceeded to conclude that, unlike the inadvertent negligence on the part of the government in *Blair,* in this case, the government's action was more egregious. Specifically, the court found it significant that at various times in his prior encounters with the criminal justice system court officials recognized that West was not serving his sentence and yet no action was taken to rectify this error. In this regard, the court noted:

> The instant case, in contrast [to *Blair*], illustrates a situation in which the government continually failed to address

the problem, despite its opportunities to do so, during an extended period of years.

*West,* 868 A.2d at 1277.

Finally, regarding whether West suffered prejudice as a result of the nine-year delay, the court concluded that the record supported West's assertion that the 1990 transcript is missing and that, due to the inordinate delay perpetuated by the court's continuous course of inaction, certain vital evidence may be stale or missing and that certain witnesses could be unavailable or have difficulty recalling this case. Accordingly, the court ultimately concluded that

> overall, we find that the *Barker* factors weigh in favor of [West]'s due process violation claim and that the government's act in returning [West] to prison following an inordinate delay attributable to the government's course of recognizing, then ignoring, the outstanding question of whether [West] served his 1990 sentence, constitutes grounds to discharge [West] from his sentence at this time.

*Id.* at 1278.

 We agree with both parties that the *Barker* factors provide the appropriate framework for analyzing whether West is entitled to relief based on a claim the his right to due process was violated under the facts of this case. With this framework in mind, we turn to the first prong of *Barker* regarding whether the delay at issue was sufficient to trigger further inquiry. On this point, the Commonwealth concedes that the delay in this case merits further inquiry. Commonwealth Brief at 18. Given that our Court has found much shorter periods of delay sufficient to trigger further inquiry under *Barker,* we too find that the nine-year delay at issue was sufficient to warrant further inquiry. *See Glass,* 526 Pa. 329, 586 A.2d 369 (fifty-one month delay between conviction and sentencing sufficient to trigger further inquiry pursuant to *Barker*); *Glover,* 500 Pa. 524, 458 A.2d 935 (forty-nine month delay sufficient to trigger further inquiry).

The second prong of *Barker* directs that the reason for the delay be examined. Moreover, as noted earlier in this regard,

courts have recognized the policy consideration that deliberate attempts to delay, with the specific purpose of hampering the defense, should be weighted heavily against the government, while a more neutral reason such as negligence should be weighted less heavily. *See Glover,* 458 A.2d at 937–38 (citing, *Barker,* 407 U.S. at 521, 92 S.Ct. 2182).

The Superior Court concluded that the reason for the delay weighed heavily against the government in that it was aware that West remained erroneously at liberty, but, nevertheless, ignored the situation. In essence, the Superior Court concluded that the delay at issue was deliberate rather than negligent. Such conclusion on the part of the Superior Court, however, is contrary to the trial court's conclusion that "[t]he delay in this case was not intentional" and occurred "through unexplained oversight." Trial court opinion at 4. Based upon our review of the record, we conclude that the trial court's finding in this regard is supported in the record. While West submitted evidence at the hearing before the trial court indicating that government entities were contacted regarding West's status,[2] there is nothing demonstrating that any government entity definitively received such notification and deliberately failed to take steps to rectify the error. Absent anything definitive in this regard, it was within the trial court's province to conclude that the reason for the error, while not specifically explained, did not amount to anything more than negligence on the part of the government. The Superior Court erred in re-evaluating the evidence presented before the trial court to reach a different finding. Given the trial court's finding that the nine-year delay was caused, not by a deliberate act of the government, but rather by negli-

2. Specifically, West submitted testimony and evidence at the hearing before the trial court indicating that a correspondence dated September 3, 1996, was sent to Judge Dauer, then the administrative judge of criminal division of the Allegheny County Common Pleas Court, by the Superintendent of the State Correctional Institution inquiring about West's status, noting that apparently he remained on bond with an active case. The letter further asked that the appropriate court staff research and advise the superintendent of West's status. Notes of Testimony (N.T.), 11/4/2002 at 23.

gence, this factor does not weigh heavily against the government in balancing the *Barker* due process factors.

■ Turning to the third prong of *Barker*, i.e., whether West timely asserted his rights, we note that, although the Commonwealth proceeded on the theory that West was aware that his judgment of sentence had been affirmed and that he was, essentially, biding his time while erroneously at liberty, the Superior Court proceeded on the assumption that Blair was unaware of the error until he was apprehended in June of 2002. Based on this assumption, the court concluded that West's assertion of his rights four month's later, on October 21, 2002, was timely. As the trial court did not make a specific finding in this regard, and the evidence of record is not clear one way or the other regarding whether West was aware that his judgment of sentence had been affirmed on appeal,[3] we also assume for the sake of analysis that West was unaware of the error until his arrest in June of 2002. Thus, this factor does not weigh against West.

Next, we turn to the final prong of *Barker*, which looks to whether the defendant suffered prejudice because of the resulting delay. As noted earlier, the Superior Court found that West was prejudiced because of missing transcripts and the lapsed memories of potential witnesses, thereby preventing the assertion of any meritorious claims for review. This finding that West suffered prejudice, however, is merely speculative and not based upon the loss of any real potential meritorious claim. *See Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596, 601 (1998) (holding, in the context of pre-arrest delay that the defendants' pre-trial due process claims were speculative and that, "to establish a due process violation for a delay in prosecution, a defendant must show that the passing

**3.** The Commonwealth points out that West testified that he was never notified one way or the other regarding the outcome of his appeal and that he never made inquiry as to whether the appeal had been successful. The Commonwealth further notes that while West testified he believed the appeal had been won, he never sought to have the appeal bond lifted from his mother's residence. On the other hand, West's mother testified that she never inquired further regarding the appeal bond because she became preoccupied with her husband's deteriorating health.

of time caused actual prejudice."). In fact, West asserts that the only claim he would have sought to pursue in a further appeal, was the same suppression claim that was already litigated on direct appeal. Accordingly, as concluded by the dissent below, "the fact the trial transcript is missing and that certain evidence may be stale is of no moment when the suppression claim has been previously litigated." *West*, 868 A.2d at 1278 (Orie Melvin, J. dissenting). Contrary to the Superior Court majority, we do not find that West suffered actual prejudice as a result of the nine-year delay he was erroneously at liberty.[4]

Weighing all of the *Barker* factors, which fall in favor of the government and against West, we conclude that West's due process rights were not violated under the facts of this case.[5] Accordingly, we hold that the Superior Court erred in granting West relief on his petition for *habeas corpus* and discharging him from serving his sentence. Accordingly, we reverse the Superior Court's decision and reinstate the order of the trial court.

Former Justice NEWMAN did not participate in the decision of this case.

Chief Justice CAPPY, Justices CASTILLE and SAYLOR and Justice BALDWIN join the opinion.

Justice EAKIN files a concurring opinion.

4. To the extent that West's claim of prejudice is based upon some alleged loss of the gains he made while erroneously at liberty, we also reject this assertion. As note previously, the Superior Court, in *Blair*, rejected a similar claim where Blair had made positive gains during his two years erroneously at liberty by obtaining an apartment, becoming employed and furthering his education. In contrast, the record reflects that West has not made positive gains while erroneously at liberty, but rather, has continued his contact with the criminal justice system, as reflected by his four subsequent arrests.

5. While the facts of this case tip the balance in the government's favor pursuant to *Barker*, it is acknowledged that, in a case that is factually similar, but where a greater demonstration of prejudice is shown, the balance might well tilt away from the Commonwealth and in favor of the defendant.

508

*Justice EAKIN concurring.*

The majority brings to mind the due process claim, "you can't execute me because you didn't execute me soon enough," which has not been well received, except by the Ninth Circuit. *Habeas corpus* relief may exist only where PCRA relief is not possible; not where PCRA claims have been exhausted. *Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287, 293 (2001) (Castille, J., concurring). Here, appellee exhausted his direct appeal and PCRA efforts. He should not be afforded *habeas* relief on a colorable constitutional claim spilled over from a PCRA claim, which is no longer available. The PCRA is the exclusive means of obtaining collateral relief, 42 Pa.C.S. § 9542, and should remain so.