COMMONWEALTH of Pennsylvania,
Appellee

v.

Rodney SOTO, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

William Aviles, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Melvin Wise, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Jose Sanchez, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Kevin Wilson, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Eugene Hudnell, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Pete Robinson, Appellant.

Superior Court of Pennsylvania.

Argued March 31, 2009.
Filed Oct. 16, 2009.

Bradley S. Bridge, Public Defender, Philadelphia, for Commonwealth, appellants.

Peter Carr, Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, KLEIN and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 These consolidated appeals are from the orders entered by the Honorable D. Webster Keogh denying defendants' petitions for Post Conviction Relief, 42 Pa. C.S.A. § 9541–9546 (PCRA). The PCRA petitions were filed when it was discovered through a newspaper article that a chemist for the police department, Colleen Brubaker, was a drug addict and had been taking confiscated pain pills for her own use and possibly selling other types of drugs to support her habit.[1] The PCRA court denied relief on the grounds that defendants failed to prove that the newly discovered evidence would have compelled a different result at trial. While the individual cases are different, we agree with Judge Keogh that, viewing the totality of the circumstances, none of the defendants has shown that the evidence of Brubaker's improper activity would have compelled a different result at any of the trials. Therefore, we affirm.[2]

¶ 2 Procedurally, counsel for the defendants claims in the appellate briefs that defendants' petitions for relief are not subject to the constraints of the PCRA as they were also filed under Pa. R.Crim.P. 720(c) and as motions for *habeas corpus.* This claim fails. A comment following Pa. R.Crim.P. 720(c) makes clear that: "After-discovered evidence discovered after completion of the direct appeal process should be raised in the context of the PCRA." Pa.R.Crim.P. 720(c) (comment). Defendants' motions must be considered solely as PCRA petitions, and they are, therefore, subject to all of the PCRA's requirements. *See Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 223–24 (1999) ("There is no alternative basis for relief outside the framework of the PCRA."); *Commonwealth v. Ahlborn,* 548 Pa. 544, 699 A.2d 718, 721 (1997) (PCRA provides sole means for obtaining state collateral relief); *cf. Commonwealth v. West,* 595 Pa. 483, 938 A.2d 1034 (2007) (in the rare case where relief cannot be pursued or is not cognizable under the PCRA, it is properly reviewed under *habeas corpus* ).

■ ¶ 3 Defendants Soto, Aviles and Wise have failed to show that they are currently "serving a sentence of imprisonment, probation or parole for the crime," as the PCRA requires. *See* 42 Pa.C.S.A. § 9543(a)(1)(i) (to be eligible for relief petitioner must plead and prove that he has been convicted of a crime under the laws of this Commonwealth and is *at the time relief is granted* currently serving a sentence of imprisonment, probation or parole for the crime). The dates of sentencing and the sentences handed down suggest that these three defendants have completed their terms, and are therefore no longer eligible for post conviction relief.[3] The

---

1. A newspaper article published on October 30, 2006 disclosed that Brubaker was arrested and accused of "skimming drugs for personal use instead of securing the evidence for prosecution in drug cases." Barbara Boyer, *A Formula for Chaos in Courts, The Philadelphia Inquirer,* Oct. 12, 2006, p. A1.

2. This panel originally issued a decision on August 10, 2009, but granted reconsideration on September 15, 2009.

3. Soto was sentenced on November 21, 2002 to a term of three to six years' incarceration; Aviles was sentenced on August 22, 2002 to a term of nine to 23 months' incarceration; and Wise was sentenced on September 11, 2002 to a term of 27 to 54 months' incarceration. Although Soto's petition suggested he *might* be serving parole at the time relief would be granted, we note that in addition to Brubaker, the evidence seized from Soto was analyzed by two other police chemists, Tanweer Ali and

burden of proving that a petitioner is currently serving a sentence of imprisonment, probation or parole rests on the petitioner. We conclude, therefore, that the PCRA court was correct in denying these three petitions.

¶ 4 Each defendant in these cases was arrested between 1999 and 2002. While the defense challenges the evidence, in her recorded statement to Detective T. Thompson, Brubaker stated that she only started stealing the painkillers in 2005, and that those thefts involved prescription painkillers, pills, not the substances at issue in the defendants' cases (cocaine, heroin, marijuana):

Q: When did you start doing this?

A: A while ago, six months or maybe longer.

Q: Longer than a year?

A: No.

Q: What types of drugs would you take from these cases?

A: Oxycontin, Percocet, Vicodin.

\*    \*    \*    \*    \*    \*

Q: How did you decide which case to take the pills from?

A: When I first started taking them, it was just bulk cases.

Q: What would you consider bulk?

A: Anything over fifty (50) pills.

Q: And that would be only for Oxycontin, Percocet, Vicodin, is that correct?

A: Yes.

Statement of Colleen Brubaker, 5/1/06, at 8–9, Exhibit B to Commonwealth's Motion to Dismiss, 1/16/07.

Mariama Shegu, and that evidence tested positive for cocaine. N.T. Trial, 8/27/02, at 49–50.

¶ 5 Defendants' counsel *suggested* that Brubaker was stealing cocaine, heroin and marijuana (the controlled substances in the instant cases) from the lab and selling it on the street to support her painkiller habit, calling into question the type and amount of drugs upon which the defendants' convictions were based. In each case, however, there either was a drug analysis by other chemists as well, a field test performed by the arresting officers, or other evidence that corroborated the drug transactions.

¶ 6 In the case of defendant Sanchez, Sanchez admitted to being a heroin user for twenty-two years. He testified that he was about to purchase heroin when he was arrested. Police recovered 13 packets of heroin and 2.004 grams of crack cocaine. Sanchez did not dispute that he possessed controlled substances; he disputed that he was a seller, maintaining that he was only a buyer. N.T. Trial, 8/27/02, at 43–57.

¶ 7 In the case of defendant Wilson, the substance involved was marijuana. Wilson also did not dispute that the drug in question was in fact marijuana. Like the Sanchez case, Wilson disputed that he was a seller, maintaining that he was merely a buyer.

¶ 8 Defendant Hudnell was convicted of possession and possession with intent to deliver (cocaine). In that case, chemist Shegu Mariamma, *in addition to Brubaker,* performed a separate seizure analysis of the evidence seized from Hudnell, all of which tested positive for cocaine. N.T. Trial, 8/21/02, at 127–28. Additionally, on February 7, 2009, Judge Keogh ordered the evidence seized from defendant Hudnell reweighed and reanalyzed.[4] In the

4. The Commonwealth pointed out that according to the police laboratory, the evidence seized from the other six defendants no longer exists. Commonwealth's Motion to Dismiss, 1/16/07, at 7.

record on appeal, however, Hudnell has failed to include the results of the re-weigh/reanalysis.[5]

¶ 9 Finally, defendant Robinson was tried *in absentia* and convicted of possession with intent to deliver (cocaine). The evidence seized from Robinson was field tested by Officer Michael Williams, who used a Becker and Dickinson reactive test for cocaine. N.T. Trial, 6/17/02, at 86–87.

■ ¶ 10 Judge Keogh was correct in concluding that all seven appeals fail on their merits.[6] To succeed in obtaining a new trial based on after-discovered evidence, the petitioner must prove, among other things, that the new evidence would likely compel a different verdict. *Commonwealth v. D'Amato*, 579 Pa. 490, 856 A.2d 806 (2004). The defendants claim numerous times that the evidence of Brubaker's illegal activities should compel a different verdict, but they fail to provide any argument that supports this. The trial court opinion notes that the Defendants "have failed to show any nexus between their drug cases and Brubaker's misconduct in the laboratory." Trial Court Opinion at 5. According to the investigation into Brubaker's misconduct, Brubaker started stealing narcotics *after* all seven defendants here were convicted. The defendants' assertion, that Brubaker likely stole drugs years before or that she added weight to contraband in evidence, is conjecture.

¶ 11 Further, Defendants argue that the PCRA court's failure to hear from the defense expert, who was retained to analyze the investigation into Brubaker's activities, was error. That expert report was attached to the Defendants' Reply to the Commonwealth's Motion to Dismiss, and the PCRA court properly determined that this report did not necessitate a hearing. The report concluded:

Brubaker engaged in actions designed to cover up her removal of tablet evidence that could be replicated in other cases containing controlled substances. However, the nature of qualitative forensic drug chemistry makes it difficult to determine whether or not these actions actually did occur on other items of controlled substance evidence. Also, within the provided documents, there are clear indications of evidence missing in some cases containing controlled substances in powder and plant forms, but the documents do not provide enough information to isolate the cause for the missing evidence. Therefore, I cannot determine if Colleen Brubaker actually engaged in any improper actions on these particular cases.

**5.** Attached as Appendix A to the Commonwealth's brief on appeal is a Philadelphia Police Department Laboratory Report, dated February 27, 2007, indicating that the DA and defense counsel were present and that the substance in fact was cocaine base. That report, however, was not certificated as part of the official record on appeal. Pa.R.A.P. 1921.

**6.** We note that the trial court was mistaken when it stated in its opinion that six of the seven appeals were untimely and therefore outside the jurisdiction of the PCRA court. The court incorrectly applied the four-prong test in *D'Amato* to the issue of whether the newly discovered evidence exception to the 1-year time limit for filing a PCRA petition had been met. A petitioner must clear the first hurdle, the exception to the PCRA time requirement, in order to obtain review on the merits. To meet the newly discovered evidence exception, one must only show that there is newly discovered evidence that could not have been found previously through due diligence, and that the petitioner raised the claim within 60 days of discovering the new evidence. 42 Pa.C.S.A. § 9543(a)(2)(vi). Nevertheless, because the original orders denying relief properly find a lack of merit rather than jurisdiction, this error is harmless.

Report of Heather L. Harris, MFS, JD, Exhibit A to Defendants' Reply to Commonwealth's Motion to Dismiss, 1/13/07, at 4.

¶ 12 Notably, the reanalysis reports in the audit of Brubaker's cases involving marijuana or cocaine all indicated that the weight of the substance was *less* than the weight at original analysis. Further, the report essentially concluded that the expert's analysis was inconclusive.

¶ 13 Defendants have failed to show that had Brubaker's activities been known, or her statement challenged, the outcome of the trials would have been different.

¶ 14 Our decision in *Commonwealth v. Rivera*, 939 A.2d 355 (Pa.Super.2007), does not require we hold otherwise. In *Rivera*, an earlier case involving Brubaker, this Court remanded *on direct appeal* for a hearing on whether there should be a new trial for "the lower court [to] develop the record and make that call in the first instance." *Id.* at 359. It is true that this Court stated "[I]t would appear likely that a new trial is warranted in this case." *Id.* However, that statement is merely *dictum.* *Rivera* was remanded for the trial court to "make the call." In this case, Judge Keogh "made the call," and we believe he made the right call. Moreover, as the *Rivera* case was on direct appeal and these cases before us are here on collateral review, the standard is different, and higher. In *Rivera,* there was no need to show that the new evidence *"would have changed*

7. § 9543. Eligibility for relief
(a) General rule.—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
* * * *
(2) That the conviction or sentence resulted from one or more of the following:
* * * *
(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently

*the outcome of the trial* if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi) (emphasis added).[7] Instead, on direct appeal, Rivera only needed to prove that the evidence was "of such a nature and character that a different result [was] likely." *Rivera, supra* at 359.

¶ 15 Orders affirmed.

become available and would have changed the outcome of the trial if it had been introduced.