956 A.2d 978

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Richard HACKETT, Appellee.**

Supreme Court of Pennsylvania.

Submitted Aug. 1, 2007.

Decided Sept. 26, 2008.

Amy Zapp, Esq., Hugh J. Burns, Jr., Esq., Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

Norris E. Gelman, Esq., Philadelphia, for Richard Hackett.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## OPINION

Justice BAER.

This is a direct appeal from an order of the trial court, which granted Appellee Richard Hackett's second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546, and awarded him a new trial on the ground that the Commonwealth engaged in purposeful discrimination in the selection of the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] For the reasons that follow, we vacate the order of the trial court and remand the matter for disposition of a remaining question as to whether Appellee is entitled to relief pursuant to *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

While the facts underlying Appellee's conviction of first degree murder are set forth in our opinion affirming his judgment of sentence on direct appeal, *Commonwealth v. Hackett*, 534 Pa. 210, 627 A.2d 719 (1993), a brief recitation thereof will facilitate an understanding of the issues raised herein.

Appellee's murder conviction arises from his involvement in a conspiracy with Marvin Spence, James Gray, and Keith Barrett to kill Gregory Ogrod and Ogrod's girlfriend, Maureen Dunne. The testimony presented at trial revealed that prior to the night of the murder, Spence and Appellee had unsuccessfully solicited David Carter to kill Ogrod and Dunne. On July 31, 1986, at approximately 1:45 a.m., Jeffrey Horoschak called Ogrod's house. Ogrod did not answer the telephone.

---

1. An order granting post-conviction relief in a case in which the death penalty has been imposed is directly appealable by the Commonwealth to this Court. 42 Pa.C.S. § 9546(d).

Instead, Appellee answered and told Horoschak that Ogrod was asleep. Thereafter, at 3:30 a.m. that same morning, Edward May drove Spence, Gray, and Barrett to a location one block from Ogrod's house. Approximately thirty minutes later, Appellee, who was already at the location, served as lookout while Spence, Barrett, and Gray attacked Dunne and Ogrod with knives and a crowbar while they slept in the basement of their home. Dunne was stabbed in the heart and died almost instantly. Ogrod, however, survived the attack and eventually identified Spence as one of the perpetrators.

About one hour after the murder, Appellee called his girlfriend, Wendi Rosenblum, and told her Ogrod was dead. Appellee directed Rosenblum to tell police that he had stayed at Rosenblum's apartment all night. While still covered in blood, Spence confessed to Carter, who was apparently with him after the incident, that he had committed murder. A week later, Appellee's girlfriend observed Appellee dispose of a crowbar.

Appellee, Spence, Gray, and Barrett were tried together in a jury trial in 1988. The Commonwealth presented Ogrod's identification of Spence as one of the attackers as well as the testimony of Horoschak, Rosenblum, Carter, and May. During jury selection, Spence, who is African–American, raised a claim under *Batson,* alleging that the prosecutor, Jack McMahon, improperly struck black jurors. Appellee, who is white, raised no such claim. Following the jury trial, all four defendants were convicted of murder.[2] On July 17, 1988, Appellee and Spence were sentenced to death and Gray and Barrett were sentenced to life imprisonment. Post-trial motions were denied. Appellee filed a direct appeal in our Court, but did not raise a *Batson* claim. We affirmed Appellee's judgment of sentence on June 30, 1993. *Commonwealth v. Hackett, supra.*[3]

---

**2.** Appellee was also convicted of aggravated assault, possession of an instrument of crime, and criminal conspiracy.

**3.** Spence raised in his direct appeal the issue of whether a new trial was warranted due to, *inter alia,* Prosecutor McMahon's alleged misconduct in the striking of black jurors. Our Court affirmed Spence's

For purposes of the PCRA, Appellee's judgment of sentence became final in September of 1993, when the time for seeking certiorari from the United States Supreme Court expired.[4] *See* 42 Pa.C.S. § 9545(b)(3) (providing that a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review). Generally, a PCRA petition must be filed within one year of the date the judgment becomes final. 42 Pa.C.S. § 9545(b)(1).[5]

Although Appellee's first. PCRA petition was not filed until January 14, 1997, well after Appellee's sentence became final in 1993, it was deemed to be timely filed because his judgment of sentence became final prior to the 1995 amendments to the PCRA, and his petition was filed within one year of the effective date of such amendments. *See* Section 3(1) of the Act (Spec.Sess. No. 1), Nov. 17, 1995, P.L. 1118, No. 32. (providing that a petitioner whose judgment became final before the effective date of the amendments would be deemed to have filed a timely petition under the Act only if the petitioner's first petition was filed within one year of the amendments' effective date). In this first PCRA petition, Appellee did not raise a *Batson* claim, but rather asserted five claims of ineffective assistance of counsel. The PCRA court denied relief and this Court affirmed. *Commonwealth v. Hackett*, 558 Pa. 78, 735 A.2d 688 (1999).[6]

judgment of sentence, holding that we were unable to consider his *Batson* claim because he failed to develop the requisite record identifying the race of all of the venirepersons struck by the prosecution, the race of the venirepersons acceptable to the prosecution but struck by the defense, and the race of the jurors who actually served. *Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176, 1182–83 (1993).

4. Appellee had 90 days from the date of this Court's decision on direct appeal to file a petition for a writ of certiorari with the United States Supreme Court. United States Supreme Court Rule 13.

5. As discussed *infra*, the PCRA provides for an exception to the one-year timeliness requirement where the PCRA petition alleges and the petitioner proves one of the circumstances set forth at 42 Pa.C.S. § 9545(b)(1)(i)-(iii).

6. One of Appellee's ineffectiveness claims challenged trial counsel's effectiveness for failing to object and move for a mistrial on the ground

Appellee subsequently filed a petition for a writ of habeas corpus in federal court.[7] On August 15, 2002, while the federal *habeas corpus* petition was pending, Petitioner filed a second PCRA petition, raising a single claim based on *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which held that execution of mentally retarded criminals violates the Eighth Amendment's prohibition against cruel and unusual punishment. The PCRA court dismissed Appellee's second PCRA petition without a hearing because Appellee's federal *habeas corpus* petition was pending. Appellee appealed to our Court, requesting a remand to the PCRA court on his *Atkins* claim. The Commonwealth did not oppose Appellee's request. On October 21, 2003, this Court reversed the PCRA court's order and remanded for further PCRA proceedings, citing *Commonwealth v. Whitney*, 572 Pa. 468, 817 A.2d 473 (2003) (holding that the pendency of a petitioner's federal *habeas corpus* petition does not divest a trial court of jurisdiction to address a PCRA petition). *Commonwealth v. Hackett*, 575 Pa. 49, 834 A.2d 514 (2003). As discussed *infra* at 17, the record is unclear as to whether proceedings were thereafter conducted on Appellee's *Atkins* claim.

that the Commonwealth exercised its peremptory strikes in violation of *Batson*. We concluded that because Appellee had failed to develop the requisite record identifying the race of the relevant venirepersons, his underlying claim lacked merit and counsel could not be deemed ineffective for failing to raise it. 735 A.2d at 695.

7. The District Court granted the petition and awarded Appellee a new penalty hearing based on *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) (vacating a death sentence because there was a substantial probability that the jury may have interpreted the court's instructions and verdict form as precluding it from considering any mitigation evidence unless all jurors unanimously agreed on the existence of a particular mitigating circumstance). The United States Court of Appeals for the Third Circuit, however, reversed the grant of habeas relief. *Hackett v. Price*, 381 F.3d 281 (3rd Cir.2004) (holding that Hackett failed to demonstrate a reasonable likelihood that the jury applied the challenged instruction and verdict form in a way that prevented the consideration of constitutionally relevant evidence), *cert. denied, Hackett v. Folino*, 544 U.S. 1062, 125 S.Ct. 2514, 161 L.Ed.2d 1114 (2005).

Significantly, on May 3, 2004, Appellee filed a supplemental PCRA petition, asserting a claim of racially discriminatory jury selection under *Batson.* Appellee's *Batson* claim was based on the trial court's March 22, 2004 ruling in codefendant Spence's PCRA matter, *Commonwealth v. Spence,* CP# 8609–3311, in which Spence was granted a new trial due to Prosecutor McMahon's purposeful discrimination in the jury selection process.[8] Spence's *Batson* claim had, in turn, been based upon a videotaped training session conducted by the Philadelphia Office of District Attorney and presented by Prosecutor McMahon, which had been released to the public by the Office of District Attorney in April of 1997. The videotape is of a lecture given by Prosecutor McMahon, wherein he advocates the use of various racial and gender stereotypes to discriminate in the selection of jurors. *See Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 729 (2000) (explaining the significance, content, and release date of the McMahon videotape).

Appellee contended that his supplemental PCRA petition fell under the exception to the PCRA's one-year timeliness requirement set forth at 42 Pa.C.S. § 9545(b)(1)(ii), which applies when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." Acknowledging that a petition raising an exception to the one-year timeliness requirement must "be filed within sixty days of the date the claim could have been presented" pursuant to 42 Pa.C.S. § 9545(b)(2), Appellee maintained that his supplemental petition was timely filed within sixty days of the trial court's ruling in the *Spence* PCRA matter.[9]

8. Appellee asserts that the Commonwealth did not appeal the new trial awarded to Spence. Appellee's Brief at 22.

9. Appellee also alleged that his supplemental PCRA petition was filed within sixty days of the order of the Third Circuit Court of Appeals, which denied reargument in *Holloway v. .Horn,* 355 F.3d 707 (3rd.Cir.2004), *cert. denied, Beard v. Holloway,* 543 U.S. 976, 125 S.Ct. 410, 160 L.Ed.2d 352 (2004) (holding that this Court's procedural requirements regarding the development of a complete record to establish a *prima facie* case of a *Batson* violation is an unreasonable application of federal law). The PCRA court did not base its grant of

Appellee also alleged in his supplemental PCRA petition that he was entitled to relief on his *Batson* claim under the state *habeas corpus* statute, 42 Pa.C.S. § 6501 *et seq.* He further contended that the grant of relief to Spence while denying him relief for the same constitutional violation would itself constitute a separate and distinct deprivation of due process and equal protection of the law. Finally, Appellee asserted that this Court should exercise its statutory authority under 42 Pa.C.S. § 9711(h)(3)(i), to vacate his death sentence on the grounds that it was arbitrarily imposed.

On October 5, 2005, without holding an evidentiary hearing, the PCRA court granted Appellee a new trial on the *Batson* claim. The court rejected the Commonwealth's contention that it lacked jurisdiction over Appellee's PCRA petition because it was untimely filed. The court reasoned that the "trigger-date" for the sixty-day provision in Section 9545(b)(2) was March 22, 2004, when it placed on the record its finding in *Spence* that the Commonwealth violated *Batson* by engaging in purposeful discrimination in striking a black juror. The court acknowledged that its ruling in *Spence* was based on the training videotape made by Prosecutor McMahon who had tried the case against Spence and Appellee. Nevertheless, it rejected the Commonwealth's argument that it was the discovery of the McMahon tape and not the court's ruling in *Spence* that constituted the "facts" supporting application of Section 9545(b)(1)(ii)'s exception to the one-year PCRA timeliness requirement. The PCRA court stated that "[i]t would be patently unjust to deny [Appellee] equal protection under the Pennsylvania and U.S. Constitutions on the basis that he did not share his codefendant's skin color, especially when the retrial will be for the actual doer, and [Appellee] was the

relief on *Holloway* and Appellee has abandoned any reliance upon that decision in his brief filed in this Court. Moreover, we have adhered to the procedural requirements criticized in *Holloway* as neither this Court nor the United States Supreme Court has explicitly overruled our long line of precedent mandating a full and complete record to establish a *Batson* violation. *Commonwealth v. Fletcher,* 580 Pa. 403, 861 A.2d 898, 910 n. 15 (2004); *Commonwealth v. Spotz,* 587 Pa. 1, 896 A.2d 1191, 1212 n. 27 (2006).

■■■■■■

lookout." PCRA Court Opinion dated June 8, 2006, at 6. The Commonwealth's motion to reconsider was denied on October 27, 2005.[10]

■ The Commonwealth argues that the PCRA court lacked jurisdiction over Appellee's petition because it was untimely filed. It contends that this Court has repeatedly held that the PCRA time requirements are jurisdictional in nature and that we have no authority to create *ad hoc* non-statutory exceptions to them. It alleges that the PCRA court's ruling on Spence's *timely* filed PCRA petition cannot serve as the newly discovered "fact" upon which Appellee's *Batson* claim is predicated pursuant to Section 9545(b)(1)(ii). Rather, the Commonwealth argues that the "fact" upon which Appellee's *Batson* claim is predicated, which was "unknown" to Appellee and "could not have been ascertained by the exercise of due diligence" pursuant to Section 9545(b)(1)(ii), was the discovery of the McMahon tape, which had been released to the public in April of 1997. To illustrate the point, the Commonwealth asserts that the same evidence that enabled Spence to raise successfully a *Batson* claim in a timely filed PCRA petition was likewise available to Appellee in April of 1997, long before Appellee filed his second PCRA petition in 2002 and his supplemental PCRA petition in 2004. Nevertheless, the Commonwealth maintains, Appellee chose not to proceed on such grounds in a timely fashion.

Our analysis begins with the plain language of Section 9545(b) of the PCRA, which sets forth in relevant part:

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

10. This Court's standard of review is limited to whether the PCRA court's order is supported by the record and free of legal error. *Commonwealth v. Abu-Jamal*, 574 Pa. 724, 833 A.2d 719, 723 (2003).

\* \* \*

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

\* \* \*

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b)(1)(ii), (b)(2).

This Court has repeatedly held that the time limitations pursuant to the PCRA amendments are jurisdictional. *Commonwealth v. Robinson,* 575 Pa. 500, 837 A.2d 1157, 1161 (2003); *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214, 222 (1999). Jurisdictional time limits go to a court's right or competency to adjudicate a controversy. *Id.* We have further held that "the PCRA confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." *Robinson,* 837 A.2d at 1161.

It is clear that the instant PCRA petition filed on August 15, 2002, and the supplement to that petition filed on May 3, 2004, are facially untimely as they were not filed within one year of the date Appellee's judgment of sentence became final in 1993. Notwithstanding that Appellee's judgment of sentence became final prior to the 1995 amendments to the PCRA, this matter involves Appellee's *second* PCRA petition and it therefore could not fall under the exception to the timeliness requirements for first PCRA petitions filed within one year of the effective date of the amendments. Section 3(1) of the Act (Spec.Sess. No. 1), Nov. 17, 1995, P.L. 1118, No. 32. Thus, Appellee must demonstrate the substantive requirements for one of the exceptions to the time-bar set forth in Section 9545(b)(1)(i)-(iii) in order for the court to have jurisdiction over his petition.

As to Appellee's *Batson* claim,[11] we agree with the Common-wealth that Appellee has failed to plead and prove the applica-bility of Section 9545(b)(1)(ii) and therefore the PCRA court had no jurisdiction to grant relief. Simply put, the facts upon which the *Batson* claim were predicated were ascertainable by Appellee upon the exercise of due diligence when the McMa-hon tape was released in April of 1997. There was nothing preventing Appellee from raising his *Batson* claim within sixty days thereafter. Appellee's attempt to circumvent the statu-tory language by asserting that the factual predicate of his claim is actually the PCRA court's ruling in *Spence* is spe-cious. A PCRA petitioner cannot avoid the one-year time bar by tailoring the factual predicate of the claim pled in his PCRA petition in a way that unmistakably misrepresents the actual nature of the claim raised. *See Commonwealth v. Fisher*, 582 Pa. 276, 870 A.2d 864, 870 (2005) (rejecting PCRA petitioner's attempt to invoke Section 9545(b)(1)(ii)'s exception to the time-bar based on the date of issuance of a study on FBI methodologies because the facts underlying the study were previously available); *Commonwealth v. Johnson*, 580 Pa. 594, 863 A.2d 423, 426–27 (2004) (holding that Section 9545(b)(1)(ii) was not satisfied where PCRA petitioner relied upon an affidavit containing facts that could have been previ-ously ascertained upon the exercise of due diligence); *Com-monwealth v. Whitney*, 572 Pa. 468, 817 A.2d 473, 478 (2003), citing *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 588 n. 4 (2000) (rejecting PCRA petitioner's claim that the Baldus–Woodworth study of the Philadelphia criminal justice system, which indicated that African–Americans convicted of first de-gree murder received the death penalty more often than white defendants, fell within Section 9545(b)(1)(ii)'s exception to the time-bar because the statistics upon which the study was based were of public record and cannot be said to have been unknown to the petitioner). Here, Appellee's *Batson* claim is not dependent upon what occurred in the PCRA matter of his

11. As Appellee raised separate claims in his PCRA petition, it is appro-priate that we examine each contention independently to determine whether it was timely raised, and therefore whether we have jurisdic-tion to address it. *Commonwealth v. Fahy*, 737 A.2d at 222.

codefendant and could have independently been raised by Appellee in a timely manner. Appellee, however, chose not to raise such claim until years after the McMahon tape was released to the public. As the *Batson* claim was untimely, the PCRA court lacked jurisdiction to grant relief.

Appellee's contentions to the contrary are not persuasive. Appellee first alleges that Prosecutor McMahon's reasons for striking the African–American venirepersons and the racial composition of his jury were "unknown" to him until such "facts" were revealed in Spence's PCRA matter. He also argues that he was unable to demonstrate a *Batson* violation until the *Spence* PCRA court made a factual finding of purposeful discrimination. These claims cannot save Appellee as he knew or should have known the racial composition of his own jury, and could have determined the reasons behind Prosecutor McMahon's striking of venirepersons by merely litigating the *Batson* claim, as Spence did. In this regard, Appellee ignores the obvious; that Spence prevailed on his *Batson* claim without a previous court finding of purposeful discrimination. As noted, the PCRA court's finding of purposeful discrimination in *Spence* was based on evidence equally available to Appellee.[12]

Having concluded that Appellee's *Batson* claim was untimely filed and that the PCRA court lacked jurisdiction to grant relief on such claim, we next address Appellant's remaining allegations, which were preserved in his supplemental PCRA petition.

**12.** Appellee further relies on *Johnson v. United States,* 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005), for the proposition that judicial findings can be triggers for purposes of construing a statutory timeliness provision. *Johnson,* however, is clearly distinguishable on both factual and legal grounds. Interpreting a one-year federal statute of limitations, the United States Supreme Court held in *Johnson* that the *vacatur* of a prior state conviction used to enhance a federal sentence constituted a new "fact," which commenced the statute of limitations for collaterally attacking the federal sentence. Here, Appellee is proceeding under the PCRA and has failed to allege that any new facts arose in his case. Rather, the basis for Appellee's invocation of the timeliness exception for his *Batson* claim is that his codefendant was granted relief on a claim that Appellee never raised.

■ Arguing in the alternative, Appellee contends that a *Batson* claim does not fit within the eligibility requirements of Section 9543(a)(2) of the PCRA [13] and therefore he is entitled to state *habeas corpus* relief. Relying on subsection (a)(2)(i) of Section 9543's PCRA eligibility requirements, Appellee argues that a *Batson* claim is not a constitutional violation that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.*[14] Instead, he maintains that the injury against which *Batson* protects is the equal protection right of venirepersons not to be discriminated against, which is unrelated to the reliability of the verdict rendered. Appellee concludes that because the PCRA does not afford him a remedy on his *Batson* claim, he is entitled to state *habeas corpus* relief.

We decline Appellee's invitation to construe a *Batson* claim as falling outside the statutory framework of the PCRA. Initially, we note that both the PCRA and the state *habeas corpus* statute contemplate that the PCRA subsumes the writ of habeas corpus in circumstances where the PCRA provides a remedy for the claim. *Commonwealth v. Peterkin*, 722 A.2d at 640. *See also* 42 Pa.C.S. § 9542 ("The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis."); 42 Pa.C.S. § 6503(b) ("[T]he writ of habeas corpus shall not be

13. Section 9543, entitled "Eligibility for relief," provides in relevant part as follows:
> (a) GENERAL RULE.—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:
> (2) That the conviction or sentence resulted from one or more of the following:
> (i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> 42 Pa.C.S. § 9543(a)(2)(i).

14. Appellee presumably concedes that the remaining subsections of Section 9543(a)(2) are not applicable to his *Batson* claim.

available if a remedy may be had by post-conviction hearing proceedings authorized by law.").

Contrary to Appellee's contention, we have held that the scope of the PCRA eligibility requirements should not be narrowly confined to its specifically enumerated areas of review. *Commonwealth v. Judge*, 591 Pa. 126, 916 A.2d 511, 520 (2007). Such narrow construction would be inconsistent with the legislative intent to channel post-conviction claims into the PCRA's framework, *id.*, and would instead create a bifurcated system of post-conviction review where some post-conviction claims are cognizable under the PCRA while others are not. *Commonwealth v. Lantzy*, 558 Pa. 214, 736 A.2d 564, 569–70 (1999).

Instead, this Court has broadly interpreted the PCRA eligibility requirements as including within its ambit claims such as this one, regardless of the "truth-determining process" language that Appellee invokes from Section 9543(a)(2)(i). *See Commonwealth v. Liebel*, 573 Pa. 375, 825 A.2d 630 (2003) (holding that claim challenging counsel's effectiveness for failing to file a petition for allowance of appeal is cognizable under PCRA); *Commonwealth ex. rel. Dadario v. Goldberg*, 565 Pa. 280, 773 A.2d 126 (2001) (holding that claim alleging counsel's ineffectiveness during the plea bargaining process is cognizable under the PCRA); *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999) (holding that claim alleging ineffective assistance of counsel during penalty phase of capital case is cognizable under the PCRA); *Commonwealth v. Lantzy, supra*, (holding that claim alleging ineffective assistance of counsel for failing to file an appeal is cognizable under the PCRA).

We find that Appellee's *Batson* claim, which essentially attacks his underlying murder conviction, is akin to the aforementioned claims which have been held to be within the ambit of the PCRA and is unlike those unique claims which fall outside the PCRA's statutory scheme. *See Commonwealth v. West*, 595 Pa. 483, 938 A.2d 1034 (2007) (holding that substantive due process challenge to continued validity of defendant's judgment of sentence after a nine-year delay is not cognizable

under the PCRA); *Commonwealth v. Judge, supra,* (holding that allegation that Canada violated appellant's rights under the International Covenant for Civil and Political Rights is not cognizable under the PCRA).[15] As the PCRA provides a remedy on a *Batson* claim, Appellee is not entitled to seek *habeas corpus* relief.

■ Appellee next contends that granting Spence a new trial while denying him relief for the same constitutional violation deprives him of due process and equal protection as guaranteed by the United States and Pennsylvania Constitutions. He argues that this claim is entirely independent from his *Batson* claim, and that he could not have raised it until Spence was granted PCRA relief in the form of a new trial in March of 2004. Appellee concludes that this claim was filed within sixty days of the PCRA court's ruling in *Spence* and is therefore timely pursuant to 42 Pa.C.S. § 9545(b)(2).

We recognize that Appellee's *Batson* claim is based upon the venirepersons' equal protection right not to be discriminated against, while his due process/equal protection claim alleges his own equal protection right not to be treated differently from his co-defendant. Nevertheless, the due process/equal protection claim is likewise untimely. The PCRA court's grant of relief to Spence cannot serve as a "fact" which was "unknown" to Appellee and "could not have been ascertained by the exercise of due diligence" pursuant to 42 Pa.C.S. § 9545(b)(1)(ii), as such purported "fact" did not evolve from or relate in any way to Appellee's case. In other words, no factual predicate of unequal treatment exists because the grant of relief to Spence was based on a claim never raised by Appellee on direct appeal or in a timely PCRA petition.

**15.** Moreover, this Court has examined *Batson* claims within the PCRA framework, albeit without challenges being raised as to the applicability of the PCRA eligibility requirements relied upon here by Appellee. *See Commonwealth v. Jones,* 590 Pa. 202, 912 A.2d 268 (2006) (finding *Batson* claim waived); *Commonwealth v. Sneed, supra,* (holding that while *Batson* claim was waived, derivative claim that counsel was ineffective for failing to raise the *Batson* claim is cognizable under the PCRA); *Commonwealth v. Wharton,* 571 Pa. 85, 811 A.2d 978 (2002) (finding *Batson* claim waived).

Appellee's reliance on *Commonwealth v. Cruz,* 578 Pa. 263, 851 A.2d 870 (2004) is therefore misplaced as *Cruz* did not involve an interpretation of the PCRA's timeliness requirements. Instead, the petitioner in *Cruz* raised a claim in a timely PCRA petition that he was denied due process and equal protection because he received disparate treatment on direct appellate review, when compared to his codefendant. Although both the petitioner and his codefendant had standing to seek and, in fact, sought suppression of the same evidence, the petitioner's codefendant was granted a new trial on direct appeal on the suppression issue and the petitioner was denied the same. While this Court did not grant relief on equal protection or due process concepts, *id.* at 877, we held that the petitioner was entitled to relief on his underlying suppression issue, which was "available on collateral review in the particularized circumstances presented." *Id.* at 878. *Cruz* is clearly distinguishable as Appellee never sought the relief that Spence was granted and was not entitled to the same. Accordingly, Appellee has failed to demonstrate a viable factual predicate to invoke the after-discovered fact exception of 42 Pa.C.S. § 9545(b)(1)(ii).

Moreover, Appellee would not have been entitled to the same constitutional treatment had he timely preserved such claim. Although Appellee's trial occurred after *Batson* had been decided, he had no basis at that time to challenge the discriminatory striking of African American venirepersons because Appellee is Caucasian. It was not until three years later that the United States Supreme Court held in *Powers v. Ohio,* 499 U.S. 400, 402, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), that a criminal defendant may object to race-based exclusions of prospective jurors, whether or not the defendant and the excluded juror share the same race. This Court has expressly ruled that *Powers* cannot be retroactively applied to a PCRA petitioner where that petitioner failed to preserve the issue by challenging the Commonwealth's striking of African–American jurors at trial and again on appeal. *Commonwealth v. Tilley,* 566 Pa. 312, 780 A.2d 649, 652 (2001).

Our holding in *Tilley* was reaffirmed in *Commonwealth v. Sneed, supra.* In *Sneed*, 587 Pa. 318, 899 A.2d 1067 (2006), the PCRA petitioner's trial took place prior to the United States Supreme Court's decision in *Batson.* In his subsequent PCRA petition, the petitioner alleged a *Batson* violation. We held that such claim could not afford the petitioner relief because he waived his *Batson* claim by failing to challenge the Commonwealth's use of peremptory challenges at trial and on direct appeal. 899 A.2d at 1075. We stated that the petitioner "would not be entitled to retroactive application of the *Batson* decision if this were a direct appeal, and he certainly is not entitled to its retroactive benefit on collateral attack under the PCRA." *Id.*

Thus, in addition to the fact that Appellee failed to raise a *Batson* claim in a timely PCRA petition, our decisions in *Tilley* and *Sneed* clearly establish that Appellee would not be entitled to relief based upon a retroactive application of *Powers* because he failed to preserve the underlying claim.

Appellee next contends that that this Court should review his death sentence under 42 Pa.C.S. § 9711(h)(3)(i), to determine if it is the product of "any arbitrary factor." Section 9711(h), entitled "Review of Death Sentence" provides that "A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules." *Id.* at § 9711(h). Subsection (3)(i) provides that our Court shall affirm the sentence of death unless it determines that "the sentence of death was the product of passion, prejudice or any other arbitrary factor." This claim fails as Section 9711 sets forth this Court's obligation in reviewing a death sentence on direct appeal, and has no application to a petition for collateral relief filed pursuant to the PCRA.

Finally, Appellee argues that in the event that we find his claims to be meritless, we should nevertheless remand this matter to the PCRA court so that a hearing can be held on his *Atkins* claim. Appellee acknowledges that the PCRA court's opinion stated without explanation that the court had "denied relief under the *Atkins* claim" on October 5, 2005. PCRA

Court Opinion dated June 8, 2006 at 2. He points out, however, that at the PCRA hearing held on October 5, 2005, the court expressly indicated that it was not ruling on the *Atkins* claim. Appellee's claim in this regard is supported by the record, which reveals the following:

COUNSEL FOR THE COMMONWEALTH: Your Honor, as far as the *Atkins* claim, are you just not going to rule on that?

THE COURT: I'm not going to rule on that. If you want me to have a hearing on *Atkins,* I'll have a hearing on *Atkins.*

Notes of Testimony of PCRA Hearing dated October 5, 2005, at 18. Further, the court's handwritten order of October 5, 2005 states, "Court grants a new trial under *'Batson'* claim 476 U.S. 79, 106 S.Ct. 1712Not under *Atkins.*" Such order does not indicate that the *Atkins* claim was fully considered and denied.

The Commonwealth responds that Appellee should not be given another opportunity to present evidence on the *Atkins* issue when we specifically remanded this case for that purpose in 2003, and Appellee failed to present any evidence on the issue.[16] It is unclear, however, whether Appellee, in fact, was given an opportunity to present evidence on this claim. Under these circumstances and because Appellee is at least entitled to a ruling on the *Atkins* claim so that the issue can be reviewed on appeal, we remand the matter to the PCRA court for disposition of the *Atkins* claim.

Accordingly, for the reasons set forth herein, we vacate the order of the PCRA court and remand the matter to that court solely for disposition of Appellee's *Atkins* claim.[17]

Justice GREENSPAN did not participate in the consideration or decision of this case.

**16.** The Commonwealth conceded that the *Atkins* issue was timely filed. Notes of Testimony of PCRA Hearing dated October 5, 2005, at 6.

**17.** We leave it to the PCRA court's discretion whether a hearing is necessary to explore the *Atkins* claim and to enable the court to issue a reasoned ruling and opinion on the matter.

Justice TODD and Justice McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion in which Justice EAKIN and McCAFFERY join.

Justice SAYLOR files a concurring opinion.

\* \* \*

Chief Justice CASTILLE, concurring.

I join the learned Majority Opinion, which vacates the erroneous order of the PCRA [1] court granting appellee relief on his serial petition, in its entirety. Appellee's belated *Batson*[2] claim, as well as his derivative equal protection/due process claim, plainly is time-barred and not subject to any of the limited time-bar exceptions, and the PCRA judge should have followed those statutory commands. *See* 42 Pa.C.S. § 9545(b). I write separately only to address a concern with the PCRA court's approach to the *Batson* claim and the *Atkins*[3] claim, and to address a point made in Mr. Justice Saylor's Concurring Opinion.

It appears that the PCRA court accepted appellee's alternative theory that the grant of *Batson* relief to his co-defendant contemporaneously gave rise to a viable due process or equal protection right to demand identical relief via a serial PCRA petition. As the Majority notes, the Honorable Willis Berry (who was not the trial judge) made a legal finding of a *Batson* violation with respect to co-defendant Spence, who allegedly is African–American, who actually raised a *Batson* objection at trial, and who apparently timely renewed that challenge after disclosure of the "McMahon tape." Judge Berry erroneously concluded that the relief he granted on the co-defendant's preserved claim was a "new fact" which made appellee's own untimely and unpreserved *Batson* claim—raised in a serial petition—both timely and meritorious. At the end of his

1. Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

explanation of why he granted *Batson* relief, Judge Berry addressed appellee's alternative "equal protection" theory in the following concluding paragraph:

> There was purposeful discrimination, and a re-trial for [co-defendant] Spence is scheduled.... It would be patently unjust to deny Petitioner's [sic] equal protection under the Pennsylvania and U.S. Constitutions on the basis that he did not share his co-defendant's skin color, especially when the retrial will be for the actual doer, and Petitioner was the lookout.[⁴] In fact, to do the right thing, every co-defendant—Morris Spence, Richard Hackett, James Gray, and Keith Barrett—whether raised in a petition or not, should have their convictions overturned and given new trials.

This analysis is irrelevant and unpersuasive as a jurisprudential matter. Ours is a nation, and a Commonwealth, of laws. The judiciary exists to construe the law, not to indulge vague notions of what a judge may feel would amount to "doing the right thing" in the absence of law. The PCRA judge should be mindful of his duties to consult and apply the law, including the salutary restrictions in the PCRA.

The PCRA judge's performance on the *Atkins* issue, which this Court remanded for reconsideration in 2003, is equally troubling. The PCRA court's indeterminate handling of an *Atkins* claim we specifically remanded was as superficial as its analysis of the defaulted *Batson* and unripe equal protection claims it inexplicably embraced.

Finally, I write separately to address Justice Saylor's observation in his Concurring Opinion that "*Batson* violations are a

---

4. Appellee's active role in this conspiracy to murder multiple victims was far more than as a mere lookout. As this Court noted on direct appeal, "Hackett's convictions arose as the result of a conspiracy which he led for the primary purpose of killing Gregory Ogrod." *Commonwealth v. Hackett*, 534 Pa. 210, 627 A.2d 719, 721 (1993). Appellee's animus against Ogrod arose from "a living arrangement that went bad," while co-defendant Spence's animus arose from a "soured drug-dealing relationship" with Ogrod. *Id.* In advance of the early morning, brutal assault that resulted in serious injuries to Ogrod and the murder of sixteen-year-old Maureen Dunne by a stab wound to the heart, appellee had, in addition to announcing his intention to kill Ogrod, offered a "hitman" $5,000 to kill Ogrod and Ms. Dunne. *Id.* at 721–22. Appellee was an architect of the crimes.

form of structural error 'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" Concurring Slip Op. at 1 (quoting *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). As support for its characterization of *Batson* violations as a type of structural error, the Concurring Opinion cites the U.S. Supreme Court's decisions in *Fulminante, United States v. Dominguez Benitez,* 542 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004), and *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), as well as this Court's decision in *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 734 & n. 18 (2000). Yet, neither *Neder* nor *Dominguez Benitez* mentioned *Batson* violations at all as each addressed structural error only generally, *see Neder,* 527 U.S. at 8–9, 119 S.Ct. 1827; *Dominguez Benitez,* 542 U.S. at 81, 124 S.Ct. 2333, and, while *Fulminante* did identify discrimination in grand jury selection as a type of structural error, it did so without elaboration and only as one example among a laundry list of many others, *see Fulminante,* 499 U.S. at 310, 111 S.Ct. 1246. Similarly, *Basemore* merely commented without elaboration that "*Batson* violations fall within a limited and unique category of claims which, by the nature of their impact upon the fundamental fairness of a trial, are not subject to conventional harmless error or prejudice analysis." *Basemore,* 744 A.2d at 734.

I merely note my own view that, if a *Batson* claim implicates "structural error," it is a unique form of structural error. Structural errors typically "deprive **defendants** of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence and no criminal punishment may be regarded as fundamentally fair." *Neder,* 527 U.S. at 8–9, 119 S.Ct. 1827 (emphasis added) (internal quotation marks omitted). The classic example is denial of the right to counsel. In contrast, as *Batson's* progeny has made clear, the core right being protected by *Batson* is the right of citizen-jurors not to be discriminated against. When such purposeful discrimination occurs, relief may be granted to a party—the defendant or the Common-

wealth in a criminal case—irrespective of whether the discrimination produced a jury that, in fact, was unable to be fair. The error is "structural" only in the sense that it is the type of claim that does not require proof of actual prejudice. Thus, I do not believe that it is the "structural" nature of the claim that weighs in favor of an expansive "standing" approach. The "standing" is expansive because it is the **juror** whose right is primarily at issue: the Commonwealth, or the defendant as the case may be, objects to vindicate the right of a citizen who lacks "standing" himself to object.

Finally, and respectfully, I would note that I believe the *Spence*[5] procedural requirements are salutary in the direct review paradigm. A true assessment of strikes must account for the composition of the panel as a whole, and the conduct of other lawyers exercising strikes. It must be remembered that *Batson* works both ways: the right of jurors being at issue, neither the defense nor the prosecution may discriminate, and discriminating actions of one side, if unaccounted for, result in an incomplete picture.

Justice EAKIN and McCAFFERY join this opinion.

Justice SAYLOR, concurring.

To my knowledge, neither this Court nor the United States Supreme Court has squarely addressed the issue of whether a Caucasian defendant being tried jointly with African Americans has standing to raise a claim of racial discrimination in jury selection which otherwise would pertain only to the codefendants. I believe that such standing should be accorded, since *Batson* violations are a form of structural error "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991), and "undermining the criminal proceeding's fairness as a whole[.]" *United States v. Dominguez Benitez,* 542 U.S. 74, 74, 124 S.Ct. 2333, 2335, 159 L.Ed.2d 157 (2004); *see also Neder v. United States,* 527 U.S. 1, 8–9, 119

5. *Commonwealth v. Spence,* 534 Pa. 233, 627 A.2d 1176 (1993).

S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999). *See generally Commonwealth v. Basemore,* 560 Pa. 258, 288 & n. 18, 744 A.2d 717, 734 & n. 18 (2000) (explaining that a *Batson* violation represents structural error). In my view, such standing would eliminate any need to parse between codefendants in the assessment of structural error, a special and limited category of claim with impact that is impossible to measure, both in terms of the trial under review and, more generally, public confidence in the judicial system.

That said, and while the circumstances presented are troubling, I agree with the majority that Appellee knew or should have known of the central facts underlying his claims pertaining to racial discrimination in his jury selection more than sixty days prior to the filing of his present post-conviction petition, and, for such reason, our jurisdiction is presently foreclosed under the Post Conviction Relief Act.

With regard to the majority's adherence to the requirements of *Commonwealth v. Spence,* 534 Pa. 233, 246–47, 627 A.2d 1176, 1182–83 (1993), left to my own devices I would eliminate the *Spence* requirements as such and review unpreserved, post-conviction claims of racial discrimination in jury selection under the standards otherwise set forth in *Commonwealth v. Uderra,* 580 Pa. 492, 513, 862 A.2d 74, 87 (2004) (holding that, in relation to claims deriving from the absence of an appropriate objection at trial, a post-conviction petitioner may not rely on the *prima facie* case under *Batson,* but rather, must prove actual, purposeful discrimination). *See id.* at 513 n. 12, 862 A.2d at 86 n. 12 (reflecting the view of this author that the *Spence* requirements are too stringent, at least as applied across the board to any and all challenges to asserted racial discrimination in jury selection).

Finally, I support the remand for additional proceedings concerning Appellee's claim under *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). I would merely note that it is an unsettled matter whether such a claim is subject to the jurisdictional and procedural requirements of the PCRA, or is more appropriately suited to treatment under habeas corpus principles. Personally, I favor the latter under-

standing, particularly since the United States Supreme Court has couched the *Atkins* principle in terms identical to those pertaining under *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (holding that the Eighth Amendment prohibits execution of persons whose mental illness prevents them from comprehending the reasons for the penalty and its implications). *See Atkins,* 536 U.S. at 321, 122 S.Ct. at 2252 (explaining that "the [United States] Constitution 'places a substantive restriction on the State's power to take the life' of a mentally retarded offender" (quoting *Ford,* 477 U.S. at 405, 106 S.Ct. at 2599)). Notably, as well, the Court has treated analogous claims of death ineligibility as matters arising under state habeas corpus. *See Commonwealth v. Judge,* 591 Pa. 126, 141–42, 916 A.2d 511, 520–21 (2007).