J-S53037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MUHAMMED LEACH | : | |
| | : | |
| Appellant | : | No. 592 EDA 2018 |

Appeal from the PCRA Order January 24, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0806991-2006

BEFORE:   GANTMAN, P.J., OTT, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 17, 2018**

Appellant, Muhammed Leach, appeals *pro se* from the order entered in the Philadelphia County Court of Common Pleas, which dismissed Appellant's serial petition brought under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On March 8, 2002, Appellant and three cohorts planned to rob Victim at gunpoint. During the robbery, one of Appellant's accomplices fatally shot Victim.  The Commonwealth subsequently charged Appellant with criminal homicide, criminal conspiracy, robbery, possessing an instrument of crime ("PIC"), and related offenses.  Appellant proceeded to a jury trial on October 24, 2007.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

---

*   Retired Senior Judge assigned to the Superior Court.

The PCRA court summarizes the evidence presented at trial as follows:

On March 8, 2002, [Appellant] and his accomplices, Kareem Kellam, Lamonte Green, and Tyree Cartwright, waited in a vehicle until [Victim] left the home of his girlfriend, Ms. Joyce Mack. Prior to entering the vehicle, [Appellant] told another co-conspirator, Robert White, in the presence of Vincent Mack, "I need to hold your gun. I need to get some money." At some point while [Appellant] and his accomplices were driving, [Appellant] gave the gun to Mr. Cartwright who planned to use it to rob [Victim].

At approximately 8:30 p.m., [Victim] left the house and began driving to the Melrose Bar, which was located at 7th Street and Girard Avenue. Unbeknownst to [Victim], [Appellant] and his accomplices were following him and as [Victim] exited his vehicle, Cartwright attempted to rob him and shot him in the stomach. [Victim] made his way into Melrose Bar and declared, "I've been shot." The barmaid, Pam Kellam, heard [Victim] make this statement before he collapsed on the ground. [Victim] died as a result of the gunshot wound.

Rosa Gonzalez witnessed the incident and gave testimony indicating that she saw two men outside the bar and heard the gunshot. Following the incident, she provided a general description of the shooter that matched Cartwright.

The day after the shooting, White, who was Kellam's cousin and knew [Appellant], had a conversation with [Appellant] during which [Appellant] told him that Cartwright shot [Victim] while [Appellant] remained in the vehicle. White and [Appellant] agreed that, if questioned by police, they would blame Leonard Edwards for the murder. Later in the week, White spoke to Kellam, who also said that Cartwright shot [Victim]. Both men also agreed to place the blame on Edwards.

Months later, White was arrested in an unrelated matter. Homicide detectives told him that he was being accused of having murdered [Victim] herein. White denied the allegation and informed the detectives that [Appellant], Cartwright, and Greene were involved. White gave a second statement a week later implicating his cousin, Kellam. He

also told detectives that after the murder, Cartwright had used the gun he shot [Victim] with to shoot Greene's television set.[6]

> [6] Vincent Mack, who was interviewed by Homicide and testified at trial, gave an account of the incident that corroborated White's version of it.

The investigation stalled for three years until detectives from the Cold Case squad interviewed White, then in custody for federal bank robbery charges. In his third statement to police he made inculpatory remarks that led to his arrest. He eventually was permitted to plead guilty to robbery, conspiracy, and weapons charges in exchange for his testimony against [Appellant] and the other participants. At trial, White testified seeing [Appellant] and his accomplices pull off in a car after hearing the gunshot. He also testified that he expected that the gun would be used in the robbery, but did not expect [Appellant] to hand the gun to Mr. Cartwright, or expect that his gun would be used for a murder.

Other evidence established that police were aware that [Appellant] lived in a half-way house just a few blocks from the Melrose Bar. A check of the sign-in sheet kept at the half-way house indicated that [Appellant] had signed out prior to the murder and that he signed back in within twenty minutes of the murder.

(PCRA Court Opinion, filed February 21, 2018, at 3-5) (some internal footnotes omitted).

On November 6, 2007, the jury convicted Appellant of one count each of second-degree murder (accomplice liability), conspiracy to commit murder, robbery, and firearms not to be carried without a license. The court sentenced Appellant on March 3, 2008, to life imprisonment without the possibility of parole ("LWOP"). This Court affirmed the judgment of sentence on July 22, 2009. Appellant sought no further direct review.

On July 27, 2009, Appellant timely filed his first *pro se* PCRA petition. The PCRA court appointed PCRA counsel, who filed an amended PCRA petition on July 26, 2010. In his petition, Appellant requested a new trial based on after-discovered evidence in the form of an allegedly exculpatory statement of Dione Tate. Appellant attached to his petition an affidavit of Mr. Tate, in which Mr. Tate alleged he heard Mr. White admit to shooting Victim. The PCRA court issued Rule 907 notice on May 6, 2011, and dismissed Appellant's petition on September 28, 2011. This Court affirmed on October 31, 2012.

On August 21, 2013, Appellant filed his second *pro se* PCRA petition, requesting leave to file a petition for allowance of appeal *nunc pro tunc* from this Court's October 31, 2012 disposition. On December 15, 2015, the PCRA court granted Appellant relief and reinstated his right to file a petition for allowance of appeal *nunc pro tunc* from this Court's decision affirming the dismissal of Appellant's first PCRA petition. Appellant filed a petition for allowance of appeal *nunc pro tunc* on January 4, 2016.

While Appellant's petition for allowance of appeal was pending, Appellant filed his third and current *pro se* PCRA petition on April 21, 2016.[2]

_____

[2] Under prevailing law, the PCRA court should have dismissed Appellant's April 21, 2016 PCRA petition for lack of jurisdiction. **See Commonwealth v. Lark**, 560 Pa. 487, 746 A.2d 585 (2000) (holding court has no jurisdiction to review subsequent PCRA petition that is filed while appeal from previous PCRA petition is still pending). **See also Commonwealth v. Davis**, 816 A.2d 1129, 1134 (Pa.Super. 2003), *appeal denied*, 576 Pa. 710, 839 A.2d 351 (2003) (stating appellant is precluded from filing additional PCRA petition while prior

In his petition, Appellant alleged he learned in April 2016, that an individual named Kinte Ford claimed to have been present at the scene on the night of the shooting. Appellant attached to his petition a signed affidavit of Mr. Ford, in which Mr. Ford states he saw two men, Mr. White[3] and another male Mr. Ford did not recognize, approach the scene of the shooting and then flee in different directions after Mr. Ford heard a gunshot. Mr. Ford also stated he alerted nearby police officers that a shooting had occurred, and an officer took his name and questioned him at the scene.

The PCRA court issued Rule 907 notice as to Appellant's current PCRA petition on May 17, 2017. Appellant filed a *pro se* response to the Rule 907 notice on May 24, 2017. On May 30, 2017, Appellant filed a second *pro se* response to the Rule 907 notice, in which he raised for the first time a **Brady**[4] claim. The PCRA court dismissed Appellant's current petition as untimely on January 24, 2018. On February 5, 2018, Appellant timely filed a *pro se* notice of appeal. The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant filed

_____

PCRA petition is pending on appeal). The PCRA court, however, allowed Appellant's current PCRA petition to linger on the docket until the Supreme Court denied Appellant's petition for allowance of appeal *nunc pro tunc* concerning his previous petition on May 10, 2016. Thus, we deem Appellant's current petition as filed on May 10, 2016.

[3] In his affidavit, Mr. Ford refers to Mr. White as "Robert Boone." The record indicates Robert White is an alias of Robert Boone.

[4] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

none.

Appellant raises two issues for our review:

DID THE PCRA COURT ERR IN DENYING [APPELLANT]'S PCRA PETITION AS UNTIMELY WHEN [APPELLANT] ESTABLISHED THAT HIS AFTER DISCOVERED FACTS CLAIM WAS WITHIN THE PLAIN LANGUAGE OF THE TIMELINESS EXCEPTION PURSUANT TO 42 PA.C.S.A. § 9545(B)(1)(II) AND SECTION 9545(B)(2)?

DID THE PCRA COURT ERR IN FAILING TO HOLD THAT THE COMMONWEALTH VIOLATED **BRADY V. MARYLAND**[, 373 U.S. 83, 83 S.CT. 1194, 10 L.ED.2D 215 (1963)] BY WITHHOLDING AND SUPPRESSING EVIDENCE IN VIOLATION OF ARTICLE 1, SECTION 9 OF THE PENNSYLVANIA CONSTITUTION AND [APPELLANT]'S DUE PROCESS RIGHTS PURSUANT TO THE 5TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION?

(Appellant's Brief at 3).

As a preliminary matter, the timeliness of a PCRA petition is a jurisdictional requisite. **Commonwealth v. Hackett**, 598 Pa. 350, 359, 956 A.2d 978, 983 (2008), *cert. denied*, 556 U.S. 1285, 129 S.Ct. 2772, 174 L.Ed.2d 277 (2009). A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition

will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, **a petition must allege and the petitioner must prove**:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Additionally, a PCRA petitioner must present his claimed exception within sixty days of the date the claim first could have been presented. 42 Pa.C.S.A. § 9545(b)(2). "As such, when a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the [PCRA] court has no power to address the substantive merits of a petitioner's PCRA claims." *Commonwealth v. Gamboa-Taylor*, 562 Pa. 70, 77, 753 A.2d 780, 783 (2000).

The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due

diligence. ***Commonwealth v. Bennett***, 593 Pa. 382, 395, 930 A.2d 1264, 1271 (2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. ***Commonwealth v. Carr***, 768 A.2d 1164, 1168 (Pa.Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. ***Commonwealth v. Breakiron***, 566 Pa. 323, 330-31, 781 A.2d 94, 98 (2001). This rule is strictly enforced. ***Commonwealth v. Monaco***, 996 A.2d 1076, 1080 (Pa.Super 2010), *appeal denied*, 610 Pa. 607, 20 A.3d 1210 (2011). Additionally, the focus of this exception "is on the newly discovered **facts**, not on a newly discovered or newly willing source for previously known facts." ***Commonwealth v. Marshall***, 596 Pa. 587, 596, 947 A.2d 714, 720 (2008) (emphasis in original). "[A] witness' admission of evidence previously available to a petitioner cannot resurrect an untimely PCRA claim." ***Commonwealth v. Abu-Jamal***, 596 Pa. 219, 226, 941 A.2d 1263, 1267 (2008), *cert. denied*, 555 U.S. 916, 129 S.Ct. 271, 172 L.Ed.2d 201 (2008).

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. ***Bennett, supra*** at 393, 930 A.2d at 1270. "This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'" ***Id.*** Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that

he exercised due diligence in discovering those facts. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii); ***Bennett, supra***. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia*, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

***Bennett, supra*** at 395, 930 A.2d at 1272 (internal citations omitted) (emphasis in original). Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim. ***Id.*** at 395, 930 A.2d at 1271.

Instantly, the court sentenced Appellant on March 3, 2008, and this Court affirmed the judgment of sentence on July 22, 2009. Appellant sought no further direct review. Therefore, the judgment of sentence became final on August 21, 2009, upon expiration of the time to file a petition for allowance of appeal with our Supreme Court. ***See*** Pa.R.A.P. 1113. Appellant filed the

current PCRA petition on May 10, 2016, which is patently untimely. *See* 42 Pa.C.S.A. § 9545(b)(1). In his petition, Appellant attempts to invoke the new facts exception to the PCRA time bar based upon the statement of Kinte Ford, which Appellant appended to his petition. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii). In his affidavit, Mr. Ford states he was near Melrose Bar on the night of the shooting. Mr. Ford alleges he saw two men, one of whom was Mr. White, approach the bar and then flee in different directions after a gunshot. Mr. Ford added he alerted police officers to the shooting and answered officers' questions at the scene. Notably, Appellant unsuccessfully sought relief in his first PCRA petition based upon a similar allegation that Mr. White shot Victim. Namely, Appellant attached to his prior PCRA petition the affidavit of Dione Tate, in which Mr. Tate claimed he had heard Mr. White admit shooting Victim.

Based upon the foregoing, Appellant sought relief in both his first and current PCRA petitions based upon the premise that someone other than Mr. Cartwright, namely Mr. White, shot Victim. Appellant does not present a **new fact** in his current PCRA petition; Appellant merely relies upon a different witness' statement to assert Mr. White killed Victim.[5] ***See Marshall, supra***.

_____

[5] Appellant was convicted under a theory of accomplice liability, not as the shooter. This affidavit from Mr. Ford, like the previous affidavit from Mr. Tate, does not exonerate Appellant. Moreover, we observe that the PCRA court addressed the merits of Appellant's claim before it determined if Appellant had satisfied the new facts exception to the PCRA time bar. We emphasize that when a PCRA petitioner files an untimely petition and attempts to invoke the new facts exception to the PCRA timeliness requirement, the PCRA court **first**

- 10 -

Thus, Appellant's current claim does not satisfy the new facts exception to the PCRA time bar. **See id.** Therefore, Appellant's current petition remains time barred, and the PCRA court lacked jurisdiction to review it.[6] **See Hackett, supra**. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/18

_____

must determine, as a jurisdictional threshold, whether the petition satisfies the new facts exception, which requires the court to assess if (a) the "new fact" really is a "new fact" and, if so, (b) the petitioner's due diligence in ascertaining the purported "new fact." This initial assessment does not include a merits-based analysis of the underlying after-discovered evidence claim. **See Bennett, supra** at 395, 930 A.2d at 1271. Here, the PCRA court took a reverse approach, which is fundamentally incorrect.

[6] Appellant raised his **Brady** claim for the first time in his second _pro se_ response to the PCRA court's Rule 907 notice, which the court deemed a supplemental PCRA petition, filed without leave of court. In any event, Appellant failed to plead and prove his **Brady** claim as an exception to the PCRA timeliness requirement. As a result, and in light of our disposition, we decline to address Appellant's "**Brady**" issue on appeal.