J-A15038-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES GRAHAM | : | |
| | : | |
| Appellant | : | No. 2781 EDA 2019 |

Appeal from the PCRA Order Entered September 5, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010428-2007

BEFORE:   LAZARUS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KING, J.:                    **FILED JULY 08, 2020**

Appellant, James Graham, appeals *pro se* from the order entered in the Philadelphia County Court of Common Pleas, which dismissed his third petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court set forth the underlying facts of this case as follows:

> On March 12, 2007, at approximately two o'clock p.m., a group of basketball players arrived at Dickinson Square Park, a neighborhood park with a basketball court, a recreation center, and a playground, surrounded by 3rd Street, 4th Street, Morris Street, and Tasker Street.  George Ocasio ("Ocasio") and Justin Davis ("Davis") arrived in Ocasio's white Mercury Sable and parked on Morris Street.  Mark Wilson ("Wilson"), David Stokes ("Stokes"), Terrell Drummond ("Drummond"), and Hughes arrived together in Wilson's silver Oldsmobile Intrigue.  They parked directly behind Ocasio's car on Morris Street.   William Duncan

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

("Duncan") parked his blue Grand Marquis directly behind Wilson's car.

Duncan, Ocasio, and Davis were from 5th Street and played for one team. Stokes, Drummond, and Wilson were from 7th Street and played for the other team. Most of the players had known each other for years. Each team bet $300 on the game.

Markel White ("White"), [Appellant], and [Appellant's] brother, Kareem Graham ("Kareem"), all from 5th Street, sat next to the basketball court and watched the game, along with Hughes from 7th Street. There were many other people in the park at that time as well—some watching the game, others playing on the playground.

The game went on for approximately twenty minutes until a foul call started an argument between the two teams. Stokes and [Appellant] were verbally arguing when Stokes asked Hughes to pass him his gun. When Hughes passed Stokes a gun, people began to leave the basketball court. Stokes, Hughes, and Drummond walked back to Wilson's Oldsmobile. Stokes entered the passenger seat, while the other two men sat in the backseat, Hughes behind the driver seat, and Drummond behind the passenger seat.

From approximately 50-55 yards away from the car, on a pathway in Dickinson Square Park, [Appellant] pulled out a gun, aimed it with two hands at the Oldsmobile and fired twice at the car. Two fired cartridge casings were found on the pathway where witnesses placed [Appellant].

One of the shots went through the glass window of the Oldsmobile and hit Hughes in his head. He was taken to the hospital and on March 13, 2007, he was pronounced dead as a result of this gunshot wound. The Medical Examiner did find stippling on Hughes' face which he testified could be a result of a close range shot or due to the shattered car window glass.

On March 13, 2007, March 15, 2007, and March 19, 2007, respectively, Duncan, White, and Davis gave statements to detectives identifying [Appellant] as the shooter.

On March 16, 2007, an arrest warrant was issued for [Appellant] and the Fugitive Squad went to his house that morning at 6 a.m. When the police saw a man fitting [Appellant's] description, he showed them identification with the name "Malik Lamore Graham" and claimed that he was [Appellant's] brother. However, when police investigated further, this man was in fact [Appellant] himself. He was arrested at this time. On May 17, 2007, Kareem, [Appellant's] brother, told a social worker at his juvenile detention facility that he had witnessed his brother murder someone. The social worker called Homicide Headquarters and Kareem gave a statement identifying [Appellant] as the shooter on March 12.

(PCRA Court Opinion, filed September 5, 2019, at 2-3) (citations omitted).

Appellant initially proceeded to a jury trial in 2008, which resulted in a hung jury. Following a second trial, a jury convicted Appellant on May 11, 2009, of third-degree murder and possessing instruments of crime. This Court affirmed Appellant's judgment of sentence on October 8, 2010 (*see* ***Commonwealth v. Graham***, 15 A.3d 520 (Pa.Super. 2010) (unpublished memorandum)), and our Supreme Court denied allowance of appeal on March 8, 2011.

Between 2011 and 2018, Appellant unsuccessfully litigated two PCRA petitions. On July 2, 2019, Appellant filed the current *pro se* third PCRA petition. In his petition, Appellant alleged that on June 27, 2019, he became aware of a newspaper article in the Philadelphia Daily News, dated May 7, 2019, titled: "Tour De Fourth!" The article discusses how a defendant in a separate, unrelated case was acquitted after a fourth trial. The article details how that defendant's case was helped by "the mounting credibility problems

of a former Philadelphia homicide detective, James Pitts, who worked the case and has since been accused in lawsuits, court filings, and Internal Affairs reports of forcibly coercing statements from suspects and witnesses." (Philadelphia Daily News Article, attached as Exhibit A to Appellant's PCRA petition). The article further explains how that defendant presented evidence that Detective Pitts had coerced incriminating statements from two of the Commonwealth's witnesses.

Appellant asserted in his PCRA petition that the newspaper article substantiated testimony from Commonwealth witness Markel White, who recanted his statement to police at Appellant's trial, and testified that Detective Pitts had coerced his statement incriminating Appellant.[2] On July 23, 2019, the court issued notice of its intent to dismiss the petition without a hearing, per Pa.R.Crim.P. 907. Appellant filed a *pro se* response on August 1, 2019, arguing the newspaper article constituted a "new fact" for purposes of the PCRA time-bar exception at 42 Pa.C.S.A. § 9545(b)(1)(ii). Appellant claimed he filed his PCRA petition within 30 days of his discovery of the Daily News article.

The court denied PCRA relief on September 5, 2019. Appellant timely filed a *pro se* notice of appeal on September 25, 2019, along with a voluntary concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b).

---

[2] Appellant cited to the notes of testimony from his 2008 trial, which resulted in a hung jury, rather than his 2009 trial, which resulted in his convictions.

Appellant raises the following issue for our review:

> DID THE [PCRA] COURT ERR[] WHEN IT DISMISSED APPELLANT'S PCRA PETITION AS UNTIMELY[?] APPELLANT ATTEMPTED TO INVOKE THE TIMELINESS EXCEPTION UNDER SUBSECTION 42 PA.C.S.A. § 9545(B)(1)(II), WHICH REQUIRES APPELLANT TO PLEAD AND PROVE "THE FACTS UPON WHICH THE CLAIM IS PREDICATED WERE UNKNOWN TO THE PETITIONER AND COULD NOT HAVE BEEN ASCERTAINED BY THE EXERCISE OF DUE DILIGENCE?"

(Appellant's Brief at 4).

Appellant argues Detective Pitts used illegal interview tactics in his case to force false statements from witnesses. Appellant asserts he discovered the Daily News article discussing Detective Pitts in the law library on June 27, 2019. Appellant maintains he timely filed his PCRA petition after discovery of the article. Appellant emphasizes that Detective Pitts was the lead detective in Appellant's case and witnesses at Appellant's trial testified that Detective Pitts used forcible tactics to coerce their statements implicating Appellant. Appellant concludes the newspaper article describing Detective Pitts' improper conduct constitutes "new facts" for purposes of the PCRA time-bar, and this Court should vacate the order denying PCRA relief and remand for an evidentiary hearing or new trial. We disagree.

As a prefatory matter, the timeliness of a PCRA petition is a jurisdictional requisite. *Commonwealth v. Hackett*, 598 Pa. 350, 956 A.2d 978 (2008), *cert. denied*, 556 U.S. 1285, 129 S.Ct. 2772, 174 L.Ed.2d 277 (2009). Pennsylvania law makes clear that no court has jurisdiction to hear an untimely PCRA petition. *Commonwealth v. Robinson*, 575 Pa. 500, 837

- 5 -

A.2d 1157 (2003). The PCRA requires a petition, including a second or subsequent petition, to be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

Generally, to obtain merits review of a PCRA petition filed more than one year after the judgment of sentence became final, the petitioner must allege and prove at least one of the three timeliness exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Additionally, a PCRA petitioner must file his petition within one year of the date the claim could have first been presented. *See* 42 Pa.C.S.A. § 9545(b)(2) (as amended, effective December 24, 2018; providing one year statutory window in which to invoke time-bar exception for

claims arising on or after December 24, 2017).

To meet the "newly discovered facts" timeliness exception set forth in Section 9545(b)(1)(ii), a petitioner must demonstrate "he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence." **Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa.Super. 2015). "The focus of the exception is on [the] newly discovered facts, not on a newly discovered or newly willing source for previously known facts." **Commonwealth v. Burton**, 638 Pa. 687, 704, 158 A.3d 618, 629 (2017) (internal citation and quotation marks omitted). In other words, the fact that a petitioner has "discovered yet another conduit" for the same claim previously presented "does not transform his latest source into evidence falling within the ambit of section 9545(b)(1)(ii)." **Commonwealth v. Maxwell**, 2020 PA Super 108, 2020 WL 2079168, at \*5 (Pa.Super. filed April 30, 2020) (*en banc*) (quoting **Commonwealth v. Marshall**, 596 Pa. 587, 597, 947 A.2d 714, 720 (2008)). As well, a claim based on inadmissible hearsay does not satisfy the "newly-discovered facts" exception.[3] **Commonwealth v. Abu-Jamal**, 596 Pa. 219, 230, 941 A.2d

---

[3] The substantive claim of after-discovered evidence and the newly-discovered facts exception to the PCRA timeliness requirements are often conflated and referred to as the same theory of relief. These concepts, however, are not interchangeable and require different proofs. Under the newly-discovered facts exception to an untimely PCRA petition, a petitioner must establish "the **facts** upon which the claim was predicated were **unknown** and…could not have been ascertained by the exercise of **due diligence**. If the petitioner

1263, 1269 (2008), *cert. denied*, 555 U.S. 916, 129 S.Ct. 271, 172 L.Ed.2d 201 (2008).

Instantly, Appellant's judgment of sentence became final on or around June 6, 2011, upon expiration of the time to file a petition for writ of *certiorari* in the U.S. Supreme Court. **See** 42 Pa.C.S.A. § 9545(b)(3); U.S.Sup.Ct.R. 13 (allowing 90 days to file petition for writ of *certiorari* with United States Supreme Court). Appellant filed the current PCRA petition on July 2, 2019, which is patently untimely. **See** 42 Pa.C.S.A. § 9545(b)(1).

Appellant now attempts to invoke the "newly-discovered facts" exception to the PCRA time-bar, relying on the Daily News article discussing Detective Pitts' improper interview tactics. Nevertheless, Appellant cannot demonstrate any new facts that were unknown and could not have been ascertained through the exercise of due diligence.

Significantly, Appellant admits he was aware of Detective Pitts' allegedly

---

alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection." **Commonwealth v. Bennett**, 593 Pa. 382, 395, 930 A.2d 1264, 1272 (2007) (emphasis in original). Only if a petitioner meets the statutory jurisdictional requirements by satisfying this exception to the PCRA time-bar, can he then argue for relief on a substantive after-discovered-evidence claim, which requires the petitioner to demonstrate: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. **See, e.g., Commonwealth v. Washington**, 592 Pa. 698, 927 A.2d 586 (2007); **Commonwealth v. D'Amato**, 579 Pa. 490, 856 A.2d 806 (2004).

improper interview methods at the time of his 2008 and 2009 trials. Appellant attached as exhibits to his PCRA petition notes of testimony from his 2008 trial (which resulted in the hung jury) in which Markel White recanted his prior statement implicating Appellant and described Detective Pitts' coercive ways. Indeed, Appellant raised the issue of Detective Pitts' allegedly forcible tactics on direct appeal in the context of a challenge to the weight of the evidence.[4] **See Graham, supra**. Thus, Detective Pitts' allegedly coercive tactics were not "previously unknown" to Appellant, as required to satisfy the time-bar exception. **See Brown, supra**.

Further, Appellant's claim is based on inadmissible hearsay that cannot satisfy the "newly-discovered facts" exception.[5] **See Commonwealth v. Castro**, 625 Pa. 582, 93 A.3d 818 (2014) (explaining newspaper articles contain allegations which suggest evidence might exist, but are no more than

---

[4] This Court deemed the issue waived for failure to preserve it in a timely-filed post-sentence motion. **See id.**

[5] Even if we could reach the substantive after-discovered-evidence claim, we would agree with the PCRA court that Appellant's claim would not merit relief. (**See** PCRA Court Opinion at 6-7) (explaining that jury heard evidence of Detective Pitts' alleged improper behavior at 2009 trial and chose to disregard it; Appellant presented no additional affidavits or evidence concerning White's testimony and presents only Daily News article with respect to Detective Pitts; newspaper article does not describe Appellant's case, but concerns exoneration of unrelated individual; in Appellant's case, two additional witnesses besides Markel White identified Appellant as shooter—William Duncan and Appellant's brother, Kareem Graham; Detective Pitts did not interview Duncan or Kareem; Appellant's presentation of newspaper article concerning Detective Pitts, without more, is insufficient to overturn jury's verdict). **See also Washington, supra**; **D'Amato, supra**.

allegations in any other out-of-court situation; thus, newspaper articles generally constitute inadmissible hearsay); **Abu-Jamal, supra**. Accordingly, we affirm the order dismissing Appellant's current PCRA petition as untimely.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2020