J-A26045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
JAMAL R SANDERS : No. 2549 EDA 2022

Appeal from the PCRA Order Entered September 12, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1010881-1997

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY DUBOW, J.: **FILED JANUARY 8, 2025**

The Commonwealth of Pennsylvania appeals from the September 12, 2022 order entered in the Philadelphia County Court of Common Pleas, which granted the petition of Appellee, Jamal Sanders, filed under the Post Conviction Relief Act ("PCRA")[1] and awarded Appellee a new trial. After careful review, we reverse.

The PCRA court set forth the relevant facts and procedural history of this case as follows:

> On September 5, 1997, police responded to a radio call reporting a shooting. The victim, Ronnie Johnson ("Johnson"), had been shot outside of a barbershop and died as a result of his injuries. Based on a homicide investigation that followed this incident, police arrested two suspects: Appellee and Keane Tucker

---

[1] 42 Pa.C.S. §§ 9541-9546.

("Tucker").[2] Cephus [Houser] ("Houser") would inform police that [Appellee] and Tucker had arrived at the barbershop and argued with Johnson prior to the shooting.

Appellee was eventually arrested and went to [a] jury trial before the Honorable James A. Lineberger, after which he was convicted of third-degree murder, flight to avoid prosecution, criminal conspiracy, and possession of an instrument of crime. The Commonwealth's theory was that Appellee did not shoot the victim but had conspired [with Tucker], was present at the shooting, and provided the murder weapon [to Tucker]. At trial, the Commonwealth presented the testimony of Houser and Shawn Clark ("Clark"). Houser testified that two men, including Appellee, had arrived at the barbershop with guns and that Johnson was shot twice, though he did not know if both men shot Johnson or if one of the attackers shot Johnson twice. The Commonwealth also presented ballistics evidence that proved that both shots that killed Johnson were fired from the same gun. Clark testified that several weeks prior to Johnson's murder, Appellee had loaned Clark the same gun that had been used to murder Johnson[, which Clark later returned to Appellee], tying Appellee in conspiracy to Johnson's murder.

Appellee appealed his conviction to the Pennsylvania Superior Court, and his judgment of sentence was affirmed on September 8, 2003. Appellee did not seek Allowance of Appeal to the Pennsylvania Supreme Court. On January 8, 2020, [PCRA counsel] entered his appearance on Appellee's matter and filed a PCRA Petition on Appellee's behalf. [The PCRA] court found relevant questions existed which necessitated an evidentiary hearing held on September 23, 2021 and September 27, 2021. At the evidentiary hearing testimony was presented from witnesses Robert Nixon ("Nixon"), private investigator Ronald Felder ("Felder"), and Tucker.[3] Further, as Clark had passed away two

---

[2] Tucker is sometimes referred to in the record as "Keane Tate" or "Keen Tate." For consistency, we will continue to use the name Tucker.

[3] Later in its opinion, the PCRA court makes clear that it did not award a new trial based on either Felder's testimony or Tucker's testimony at the PCRA hearing. The PCRA court concluded that testimony from Tucker at the PCRA hearing would not overcome the newly-discovered facts exception to the PCRA

*(Footnote Continued Next Page)*

weeks after submitting a sworn affidavit, his affidavit was admitted into evidence and considered by this court.

At the evidentiary hearing, Nixon testified that he had been friends with both Appellee and Clark for decades and that, in June of 2019, Clark and Nixon attended the same barbeque where Clark told Nixon that Clark had testified falsely against Appellee at trial.[4]
***
On September 8, 2022, after the PCRA hearings and numerous supporting briefs filed by [the Commonwealth] and Appellee, this court vacated Appellee's sentence and ordered a new trial. On September 29, 2022, [the Commonwealth] filed a Notice of Appeal to the Pennsylvania Superior Court, followed by a [Rule] 1925(b) Statement filed on October 19, 2022.

PCRA Ct. Op., 12/27/22, at 1-3 (internal citations and footnotes omitted).

On appeal, the Commonwealth raises one issue for our review:

Did the PCRA court err in granting a new trial in this decades-old murder case based on an alleged newly discovered statement that (1) was hearsay and not admissible under the statement-against-interest exception, and (2) did not exonerate [Appellee]?

---

time-bar. The PCRA court further concluded that it did not consider Felder's testimony as a basis for granting relief to Appellee.

[4] Specifically, Nixon testified, *inter alia*, that Clark approached him in June 2019 and told Nixon that Appellee was incarcerated for something he did not do because of Clark, and that it was really bothering Clark. Clark told Nixon that police had taken Clark out of a youth correctional facility in the middle of the night, handcuffed him, and transported him to the police station. Clark said that the police told him that a firearm Clark had been charged with using in another crime was used in the Johnson murder, and that if Clark did not tell police what they wanted to hear, then police would charge Clark in connection with the murder. Clark was about 16 years old at the time, and police made Clark sign a statement without a guardian or counsel present that implicated Appellee. Police told Clark that he would receive favorable treatment if he cooperated. Nixon further stated that prior to seeing Clark in June 2019, Nixon had not seen Clark in approximately 15 years, because shortly after Appellee's trial, Clark left the neighborhood. Nixon contacted Appellee's wife about this conversation shortly thereafter. PCRA Hr'g, 9/23/21, at 16-35.

Appellant's Br. at 8.

The Commonwealth argues that Clark's proffered recantation testimony was not admissible under the statement-against-interest exception because Clark's statement did not expose him to perjury charges since the five-year statute of limitations had expired. Appellant's Br. at 19. Further, the Commonwealth contends that Clark's statement is not supported by corroborating circumstances that clearly indicate its trustworthiness. *Id.* at 20.

The Commonwealth avers that even if the statement were admissible, it would not have altered the outcome of trial because it would not exculpate Appellee or negate the eyewitness testimony that Appellee pointed a gun at the victim seconds before the murder. *Id.* at 25. Given that Tucker was the one in possession of the gun at issue and the shooter responsible for the victim's death, the Commonwealth emphasizes that the proffered testimony did not exculpate Appellee. *Id.* For these reasons, the Commonwealth concludes that the PCRA court's award of a new trial was erroneous. *Id.* at 27.

Preliminarily, the timeliness of a PCRA petition is a jurisdictional requisite. ***Commonwealth v. Hackett***, 956 A.2d 978, 983 (Pa. 2008). Pennsylvania law is clear that no court has jurisdiction to hear an untimely PCRA petition. ***Commonwealth v. Robinson***, 837 A.2d 1157, 1161 (Pa. 2003). In order to obtain relief under the PCRA, a petition must be filed within

one year from the date the judgment of sentence became final. 42 Pa.C.S. § 9545(b)(1). Appellant's petition, filed more than fifteen years after his judgment of sentence became final, is facially untimely.

Pennsylvania courts may consider an untimely PCRA petition, however, if the petitioner pleads and proves one of the three exceptions to the time-bar set forth in Section 9545(b)(1). Any petition invoking a timeliness exception must "be filed within one year of the date the claim could have been presented." *Id.* at § 9545(b)(2). The statutory exception raised by Appellant is the newly-discovered facts exception, which requires proof that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." *Id.* at § 9545(b)(1)(ii).

The parties and the PCRA court agree that Clark's recantation statement satisfies the newly-discovered fact exception. On this record, we agree that Clark's recantation statement is a new fact that Appellee could not have discovered sooner with the exercise of due diligence. Accordingly, we turn to the merits of Appellee's claim of after-discovered evidence.

To obtain relief on a substantive claim of after-discovered evidence under the PCRA once jurisdiction is established, a petitioner must demonstrate: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach

credibility; and (4) it would likely compel a different verdict." *Commonwealth v. Washington*, 927 A.2d 586, 595-96 (Pa. 2007).

When considering a claim involving recanted testimony, "[t]he well-established rule is that an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion[.]" *Commonwealth v. Loner*, 836 A.2d 125, 135 (Pa. Super. 2003) (*en banc*) (citation omitted). "[W]e have emphasized that, when addressing an after-discovered evidence claim premised on recantation testimony, the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole." *Commonwealth v. Small*, 189 A.3d 961, 977 (Pa. 2018) (internal quotation marks and citation omitted). "The deference normally due to the findings of the PCRA court is accentuated where what is involved is recantation testimony." *Loner*, 936 A.2d at 141 (citation omitted).

Importantly, a petitioner asserting an after-discovered evidence claim must also establish that the new evidence would be producible and admissible at trial. *Small*, 189 A.2d at 972. "Questions concerning the admissibility of evidence are within the sound discretion of the [PCRA] court, and this Court will not reverse the [PCRA] court's decision absent an abuse of that discretion." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 471 (Pa. 2021) (citation omitted).

Hearsay is defined as an out of court statement that is offered into evidence to prove the truth of the matter asserted. Pa.R.E. 801(c)(1)-(2). Statements that meet the definition of hearsay are not admissible, unless they fall within an established hearsay exception. *Fitzpatrick*, 255 A.3d at 471. Pennsylvania Rule of Evidence 804 sets forth exceptions to the rule against hearsay for when the declarant is unavailable as a witness,[5] including the exception for a statement against interest.

A statement against interest is a statement that:

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Pa.R.E. 804(b)(3).

In the instant appeal, the PCRA court found Clark's statement to be admissible hearsay under the statement-against-interest exception, because "[Clark] could have faced criminal culpability if he did not falsely testify against [Appellee] at trial." Trial Ct. Op., 12/27/22, at 16. The court also found it significant that Clark did not know he would pass away before "facing any criminal liability for lying to police." *Id.* at 16 n.9.

---

[5] Here, Clark was unavailable as a witness because he could not "be present or testify at the trial or hearing because of death." Pa.R.E. 804(a)(4).

- 7 -

We disagree with the PCRA court's conclusion that Clark's recantation testimony was against his interests and exposed him to any civil or criminal liability. The Commonwealth could not have prosecuted Clark for perjury for lying to the police because the inconsistent statements must "both [have] been made" within the 5-year statute of limitations period. 18 Pa.C.S. § 4902(e); 42 Pa.C.S. § 5552(b)(1). Further, the hearsay exception requires the court to analyze whether Clark's recantation testimony, "when made," was contrary to his interests. Pa.R.E. 804(b)(3)(A). Therefore, the PCRA court engaged in speculation when it considered that Clark may have faced criminal liability if he had not testified at trial more than 20 years prior to the recantation.

Accordingly, the PCRA court abused its discretion in deciding that Clark's affidavit would be admissible at a new trial.

Even if Clark's testimony were admissible, it would not likely compel a different verdict. On this issue, Supreme Court has instructed that "the question is whether the nature and quality of the evidence is such that there is a reasonable probability that the jury would have credited it and rendered a more favorable verdict." *Commonwealth v. Johnson*, 966 A.2d 523, 542 (Pa. 2009). This inquiry includes evaluations of "the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010).

Our Supreme Court has examined several case-specific factors, including: (1) the prosecution's theory at the original trial, and the difficulty of making this argument in light of the new evidence; and (2) the prosecutor's closing remarks, which may demonstrate the importance of the new evidence. *See Commonwealth v. Bulted*, 279 A.2d 158, 161-62 (Pa. 1971).

The PCRA court found that Clark's testimony was significant because it painted "Appellee as someone who had control over firearms, lent firearms to people, and lent the very same firearm used in the murder to Clark." PCRA Ct. Op., 12/27/22, at 7. The court also found that Houser's testimony alone would have been insufficient to convict Appellee because "Houser testified that he did not see exactly who shot" the victim. *Id.* at 8.

Based on the record, Clark's testimony established only that Appellee possessed the murder weapon several weeks prior to the murder.[6] The Commonwealth primarily relied on other testimony to connect Appellee to the murder, most importantly Houser's testimony that he saw Appellee and Tucker step out of a car and point guns at the victim seconds before his death. N.T. Trial, 11/10/98, at 27-28. It is irrelevant that Houser could not discern which one of them shot the victim because the Commonwealth's theory at trial was

---

[6] Significantly, the Commonwealth's theory at trial was that Tucker was the one in possession of the murder weapon that Clark had testified to borrowing from Appellee.

that Tucker was ultimately responsible for the victim's death. For these reasons, Clark's recantation would not likely compel a different verdict.

The PCRA court's finding that the testimony would likely result in a different outcome at trial is, therefore, not supported by the record.

Accordingly, we reverse the order of the PCRA court granting Appellee a new trial.

Order reversed.

Judge McLaughlin joins the memorandum.

Judge King files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/08/2025